John M. KOSSICK, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 315, Docket 28592.

United States Court of Appeals
Second Circuit.

Argued Feb. 11, 1964.

Decided April 15, 1964.

Jacob Rassner, New York City, for plaintiff-appellant.

Terence N. Doyle, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Robert M. Morgenthau, U. S. Atty., Sherman L. Cohn, Atty. Dept. of Justice), for defendant-appellee.

Before LUMBARD, Chief Judge, and WATERMAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge:

This case, like Kossick v. United Fruit Co., 275 F.2d 500 (2 Cir. 1960), rev'd 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961), concerns a serious rectal injury inflicted upon Kossick, a seaman, in August 1950, in the United States Public Health Service Hospital at Staten Island, N. Y., by the administration of a postoperative enema containing a grossly excessive dosage of potassium iodide. The injury required much further surgery, and Kossick remained in the Hospital under treatment until April 3, 1951. He was at sea from late June to early November, 1951, when he was readmitted to the Hospital. During the next year he spent considerable time in the Hospital, some of this involving surgery, until November 10, 1952, when he was discharged as "fit for duty" with the admonition that he would have to take a laxative for the rest of his life. Since then he has made occasional visits to the Hospital or the Public Health Service outpatient clinic.

The instant action against the United States in the District Court for the Southern District of New York for negligence of the doctors and nurses at the Hospital was not begun until April 4, 1963. The appeal is from an order granting the Government's motion for summary judgment under 28 U.S.C. § 2401 (b) providing that "A tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues * * *." To avoid the apparent time bar Kossick relies on combining 28 U.S.C. § 2674, the basic provision in the Tort Claims Act making the United States liable "in the same manner and to the same extent as a private individual under like circumstances," with New York decisions, particularly Borgia v. City of New York, 12 N.Y.2d 151, 237 N.Y.S.2d 319, 187 N.E.2d 777 (1962), that a claim for malpractice does not "accrue" so long as the plaintiff is under continuous treatment for the ailment as to which the malpractice occurred or for the malpractice itself.[1]

In Tessier v. United States, 269 F.2d 305, 309 (1 Cir. 1959), also under the Federal Tort Claims Act, Judge Magruder held that a claim accrues "when it may be made the basis of a judicial action"; that the effect of § 2674 was to refer that issue to the law of the state where the injury occurred; and that since Maine, the place of the injury, would have recognized a legal wrong to Tessier when needle fragments were lodged in his body in the course of an appendectomy, his right of action ac-

---

1. In fact the Borgia case related to § 50–e of the General Municipal Law, McKinney's Consol.Laws, c. 24 requiring notice of a claim to be filed against a city within 90 days after the claim ac-

crued. But the Court of Appeals made clear that it would apply the same rule if it were "passing on a true Statute of Limitations problem * * *." 12 N.Y.2d at 155, 237 N.Y.S.2d at 321.

crued at that time even though he did not experience pain until the next year and its cause was not established until seven years later, less than two years before the action was brought. A similar situation, where the malpractice was not discovered until more than two years after the injury, came before the Fifth Circuit in Quinton v. United States, 304 F.2d 234 (1962). In a powerfully reasoned opinion for Judge Wisdom and himself, Chief Judge Tuttle explained what bizarre and indefensible results would be produced by referring to state law to determine the beginning of the two year period of § 2401(b) since the states have resorted to dissimilar devices to guard against unfair operation of statutes of limitations in tort cases, 304 F.2d at 238; he concluded "that federal law determines when the period of limitations contained in Section 2401(b) commences to run [i. e., federal law determines when a 'claim accrues' within the meaning of Section 2401(b)], even though we look to state law to determine whether any claim has accrued against the Government which would enable the claimant to sue under the Tort Claims Act. In other words, we look to state law to determine whether the plaintiff's action is premature, but to federal law to determine whether the action is stale." Judge Hutcheson concurred on the ground "that Section 2401(b) is not a statute of limitations, within the legal definition of that term [citing cases]; but that it imposes as a jurisdictional prerequisite to recovery, a substantive condition, qualification, or restriction on both the right and remedy of the plaintiff and on the suability of the United States"; on such an issue "state limitations statutes and decisions with respect to them are seen to be without bearing or relevance." 304 F.2d at 242. The Ninth Circuit has followed Quinton, one judge dissenting. Hungerford v. United States, 307 F.2d 99 (1962).

■■■ We are persuaded of the correctness of the Quinton decision. Whether § 2401(b) is regarded as a "true" statute of limitations or as "a direct limitation to the court's jurisdiction" as we have characterized "the built-in time-bar of the Suits in Admiralty Act," 46 U.S.C. § 745, American Foreign SS. Corp. v. United States, 291 F.2d 598, 604 (2 Cir.), cert. denied, 368 U.S. 895, 82 S.Ct. 171, 7 L.Ed.2d 92 (1961), a position supported directly by Simon v. United States, 244 F.2d 703 (5 Cir. 1957), and inferentially by Soriano v. United States, 352 U.S. 270, 275, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), see also States Marine Corp. of Del., v. United States, 283 F.2d 776 (2 Cir. 1960),[2] the policy behind it as a federal policy. Cf. Westinghouse Elec. Corp. v. Pacific Gas & Elec. Co., 326 F.2d 575, 579 (9 Cir. 1964). Just as it would be inimical to the design of Congress to allow the beneficent purposes of the Tort Claims Act to be frustrated by state rules that a claim for malpractice "accrued" before it could even be known, as the Quinton and Hungerford cases held, it would be equally inimical to allow a state rule postponing "accrual" far beyond any necessities of the case to subject the United States to the stale claims which the prescription of the short two-year period was intended to avoid. The general language of § 2674 must yield to the specific provisions of § 2401 dealing with time limitations, as is recognized when a state period of limitations is shorter than the period specified in the Tort Claims Act. Maryland to use of Burkhardt v. United States, 165 F.2d 869 (4 Cir. 1947); Young v. United States, 184 F.2d 587 (D.C.Cir. 1950); United States v. Westfall, 197 F.2d 765 (9 Cir. 1952). Even if we assume *arguendo* that § 2674 has some application

2. Section 2401(b) derives from Section 420 of the Federal Tort Claims Act, 60 Stat. 842, 845 (1946), which barred a claim unless action was begun within one year. The period was increased to two years by 63 Stat. 62 (1949). The relationship was obscured by the rearrangement in the 1948 Judicial Code, but we have been wisely instructed not to consider such changes as significant. Fourco Glass Co. v. Transmirra Prod. Corp., 353 U.S. 222, 227–228, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957).

to time problems, we give it sufficient force by construing it to allow the United States to object that a suit is premature under applicable state law.

■ Here Kossick must have discovered the grievous injury inflicted upon him very shortly after the administration of the enema on August 29, 1950. Although he could have begun a suit at that time, we do not say that for purposes of § 2401(b) the two-year period began to run so soon. Courts have long since rejected the mechanical concept that in all cases the limitations period necessarily starts the very moment that a suit can be brought. See Note, Developments in the Law—Statutes of Limitations, 63 Harv.L.Rev. 1177, 1200, 1204, 1213–19 (1950). There is much good sense in Chief Judge Desmond's observation in the Borgia case that "It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent * * *" 12 N.Y.2d at 156, 237 N.Y.S.2d at 321–322, and this is not altogether without application when as here the summons would be served on the United States Attorney, F.R.Civ.Proc. 4(d) (4). But the period when such considerations remained pertinent expired at the latest when Kossick was discharged after the last surgical attention to his injury in November 1952 and nothing more in the way of remedy could be accomplished. It would be unreasonable to postpone the beginning of the limitation period so long as Kossick exercised his statutory right to demand further treatment at the Hospital, 42 U.S.C. § 249—a period that will never expire so long as he is a seaman.

■■ We add that we seriously doubt whether in applying the New York two year statute of limitations for malpractice, § 50(1) of the Civil Practice Act and § 214(6) of the new Civil Practice Law and Rules, the New York courts would reach any different result in a case like Kossick's. None of the New York "continuous treatment" cases that have been cited to us presented the question whether merely occasional hospital visits at substantial intervals, and these for examination or minor treatment to alleviate sequelae of the injury rather than for further cure, would prevent accrual of the claim.[3] On the facts before the District Court, Kossick's case did not rise even to that level; the affidavits on the Government's motion for summary judgment served July 3, 1963, showed that the last of Kossick's visits to the Hospital, in February, 1961, more than two years before suit, was brief and was an examination only, and that subsequent visits to a Public Health Service outpatient clinic in Brooklyn were for ailments unconnected with the malpractice. These later visits plainly would not qualify under the Borgia doctrine, 12 N.Y.2d at 157, 237 N.Y.S.2d at 322. At the argument in this court appellant's counsel sought to have us consider, or remand for the District Court to consider, a letter dated November 29, 1963, from the Chief of the Surgical Service of the Public Health Service Hospital in Boston enclosing papers recording that Kossick had been there from July 16 to July 24, 1963—a record which, of course, was available long before Judge McLean's decision on October 10. But, even if we were to take that extraordinary course, the Boston record shows only a thorough examination, after a long interval, which we doubt would qualify under the Borgia doctrine. In any event, under our view that determination of the start of the two-year period under 28 U.S.C. § 2401(b) is an issue of federal law, we regard it as insufficient to postpone this.

Affirmed.

---

3. Gross v. Wise, 18 A.D.2d 1097, 239 N.Y.S.2d 954 (1963) and Armstrong v. City of New York, 39 Misc.2d 445, 240 N.Y.S.2d 663 (Sup.Ct.1963) are not determinative since in the former the patient was treated on thirty-nine occasions over a period of less than three years, and in the latter, under § 50–e of the General Municipal Law, the patient continued to be treated after her discharge from the hospital until her death eight days later.