Richard AUGUSTINE,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 80–5472.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 12, 1981.

Decided April 26, 1983.

Gary E. Donahoe, Robbins & Green, P.A., Phoenix, Ariz., for plaintiff-appellant.

Paul A. Katz, Asst. U.S. Atty., Phoenix, Ariz., for defendant-appellee.

Before KENNEDY, PREGERSON, and REINHARDT, Circuit Judges.

REINHARDT, Circuit Judge:

Plaintiff Richard Augustine brought an action for damages under the Federal Tort Claims Act (FTCA)[1] for the alleged malpractice of Air Force dental surgeons. The Government filed a motion to dismiss for lack of subject matter jurisdiction based on Augustine's alleged failure to comply in a timely manner with the administrative claim requirement of 28 U.S.C. § 2401(b) (1976).[2] The district court granted the motion and dismissed the action.[3] We reverse.

---

1. Federal Tort Claims Act, Pub.L. No. 601, 60 Stat. 812 (codified as amended in scattered sections of 28 U.S.C. (1976 & Supp. IV 1980)).

2. 28 U.S.C. § 2401(b) provides:

   A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

3. The government's motion was framed as a Fed.R.Civ.P. 12(b)(1) motion to dismiss. Because that motion was made after the government's responsive pleading, it was technically untimely. The matter of subject matter jurisdiction, however, may be raised by the parties at any time pursuant to Fed.R.Civ.P. 12(h)(3), and the government's motion was thus properly before the court as a Rule 12(h)(3) suggestion of lack of subject matter jurisdiction. Fed.

## I. FACTS

In September 1975, Augustine was examined by Lieutenant Colonel Wysocki, a United States Air Force dentist, for the purpose of having a dental plate constructed. An impression of Augustine's mouth was made at that time. When Augustine returned to Dr. Wysocki on October 14, 1975, Dr. Wysocki informed him that the partial plate could not be made until he had a bump on his upper left palate treated. Dr. Wysocki referred Augustine to Major Peter Allen, an Air Force oral surgeon, for an examination of the bump. Augustine testified in a deposition that at that time the bump was no bigger than a pinhead, that he experienced no pain unless pressure was applied to the area, and that it had been there for some time.

Dr. Allen examined Augustine on November 13, 1975. During the visit Dr. Allen examined the problem area, made a radiograph of Augustine's palate, and performed a needle aspiration on the bump. According to Augustine, Dr. Allen stated that he could not make a diagnosis at that time and told Augustine to return the next day.

Augustine stated that he returned to the base the next day as requested and that Dr. Allen again said that he did not know what the problem was. Augustine also stated that Dr. Allen did not perform any further tests, did not schedule an appointment for him at the Ear, Eye, Nose and Throat (EENT) clinic, and did not express any concern that the bump reflected a potentially serious medical problem. Augustine's medical records do not indicate this second visit to Dr. Allen, nor does the doctor recall such a visit. Augustine also testified that he made various unsuccessful attempts in November 1975, December 1975, January 1976, and February 1976 to get an appointment at the EENT clinic. The Government contends that Augustine did not seek further medical help until November of 1977.

In November 1977, Augustine told Dr. Gordon Young about the bump during a routine physical examination. Dr. Young referred Augustine to Dr. Nowak, who determined that the growth was cancerous. On November 16, 1977, Dr. Nowak operated on Augustine to remove the cancerous growth. In August 1980, Augustine underwent further surgery to remove additional cancerous material. It was discovered that Augustine had developed metastatic spread of the cancer.

Augustine filed his administrative claim on April 17, 1978, more than two years after the Air Force dentists allegedly failed to diagnose his condition. On December 14, 1978, Augustine filed his complaint under the Federal Tort Claims Act, 28 U.S.C. § 2674 (1976). He sought damages for the alleged medical malpractice of the Air Force dentists based on their failure to do the following: (1) to diagnose the potential hazards and possible cancerous nature of the growth; (2) to treat properly the potential hazards and possible cancerous nature of the growth; (3) to explain to him the potential hazards of such growth; (4) to explain to him the possible cancerous nature of the growth; and (5) to place him in the care of someone having the expertise to treat and diagnose the growth properly.

The government answered the complaint on April 26, 1979. Thereafter, on March 20, 1980, it filed a motion to dismiss for lack of subject matter jurisdiction. The government alleged that Augustine had not timely complied with the administrative claim requirement of section 2401(b)—which requires that a claim be filed within two years after the "accrual" of the injury—and that such compliance is a prerequisite to the subject matter jurisdiction of federal courts in FTCA cases. In support of its motion to dismiss, the government relied on various statements made by Augustine in a deposition and an exhibit attached to the deposition. The government argued that the actions of the Air Force dentists were sufficient to put Augustine on notice of the seriousness of his condition and thus that

R.Civ.P. 12(h)(3); *Csibi v. Fustos,* 670 F.2d 134, 136 n. 3 (9th Cir.1982); Wright & Miller § 1350, at 544–45, 548.

his claim accrued immediately upon the discovery of the bump by the Air Force dentists.

In response to the motion to dismiss, Augustine argued that the Air Force dentists were negligent in failing to advise him of the potential seriousness of the bump and in failing to arrange follow-up medical treatment. Augustine also argued that the government's reliance on material outside of the pleadings converted the motion to dismiss into a motion for summary judgment under the provisions of Rule 12(b).

The motion to dismiss was granted by the district court. Within ten days of the dismissal, Augustine filed a motion for reconsideration to which he attached the affidavit of Dr. Nowak, the doctor who discovered that the bump had developed into metastatic cancer. The motion for reconsideration was denied.

## II. DISCUSSION

■ Timely compliance with section 2401(b) is a jurisdictional prerequisite to maintenance of a FTCA suit. *Blain v. United States,* 552 F.2d 289, 291 (9th Cir. 1977). The defense of lack of subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Fed.R.Civ.P. 12(h)(3); *Csibi v. Fustos,* 670 F.2d 134, 136 n. 3 (9th Cir.1982); Wright & Miller § 1393, at 863–64.

■ In ruling on a challenge to subject matter jurisdiction, the district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *See Thornhill Publishing Co. v. General Telephone Corp.,* 594 F.2d 730, 733 (9th Cir.1979). In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the

merits of jurisdictional claims." *Thornhill,* 594 F.2d at 733. However, where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial. *Thornhill,* 594 F.2d at 733–35; Wright & Miller § 1350, at 558.

■ In ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits. *Thornhill,* 594 F.2d at 733–34. Therefore, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Unless that standard is met, the jurisdictional facts must be determined at trial by the trier of fact. *Thornhill,* 594 F.2d at 733–35.

It is conceivable that the district court considered the government's motion to dismiss as a motion for judgment on the pleadings, which because of its reference to materials outside the pleadings was converted into a motion for summary judgment. Fed. R.Civ.P. 12(c). Whether the motion was construed as a motion to dismiss for want of subject matter jurisdiction or as a motion for summary judgment, it is clear the district court should not have dismissed the action for the reasons given below.

In this case the determinative jurisdictional facts also go directly to the merits. Whether the court has subject matter jurisdiction here depends upon when Augustine's claim "accrued" for purposes of 28 U.S.C. § 2401(b).[4] In *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), the Supreme Court stated that a medical malpractice claim under the FTCA accrues when the plaintiff discovers both the existence and cause of his

---

4. 28 U.S.C. § 2401(b) provides that a "tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues...."

injury. *Id.* at 119–22, 100 S.Ct. at 357–59. The Court expressly held that the statute of limitations embodied in 28 U.S.C. § 2401(b) begins to run at that time even though the plaintiff does not yet know that the injury was caused by negligence. Thus, the plaintiff in *Kubrick* had the "factual predicate" for a claim against the Veterans' Administration when he was informed by an ear specialist that it was "highly possible" that the actions of the VA doctors had caused plaintiff's hearing loss. *Id.* at 118, 100 S.Ct. at 357. The Court reversed the holding of the Third Circuit that the statute did not begin to run until plaintiff was subsequently advised by another ear specialist to consult an attorney.

The Court's holding in *Kubrick* was applied by this court in *Davis v. United States,* 642 F.2d 328 (9th Cir.1981). In *Davis,* we stated that in medical malpractice actions "the statute of limitations does not begin to run, until the plaintiff has discovered, or in the exercise of reasonable diligence, should have discovered, both his injury and its cause." *Id.* at 331 (citing *Hungerford v. United States,* 307 F.2d 99, 102 (9th Cir.1962) (overruled on other grounds, *Ramirez v. United States,* 567 F.2d 854, 857 (9th Cir.1977)). We held in *Davis* that the statute began to run shortly after plaintiff was paralyzed by an injection of polio vaccine when it was clear that plaintiff was aware that the vaccine was the likely cause of his injury.

The holdings in *Kubrick* and *Davis* are instructive but cannot be applied mechanically to cases involving the failure to diagnose, treat, or warn. Both *Davis* and *Kubrick* involved situations in which some affirmative treatment administered by government doctors inflicted clearly identifiable injuries on their patients, *i.e.,* loss of hearing and paralysis. In each case, the *existence* of the injury was obvious, and the statute of limitations began to run immediately upon the discovery of its cause. In this case, however, Augustine does not claim that the affirmative actions of the Air Force dentists inflicted injury upon him, but rather that the *failure* of the dentists to diagnose and treat his condition or

warn him of its seriousness led to the development of metastatic cancer.

■ When a physician's failure to diagnose, treat, or warn a patient results in the development of a more serious medical problem than that which previously existed, identification of both the injury and its cause may be more difficult for a patient than if affirmative conduct by a doctor inflicts a new injury. Where a claim of medical malpractice is based on the failure to diagnose or treat a pre-existing condition, the injury is not the mere undetected existence of the medical problem at the time the physician failed to diagnose or treat the patient or the mere continuance of that same undiagnosed problem in substantially the same state. Rather, the injury is the *development* of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment. In this type of case, it is only when the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition that his cause of action can be said to have accrued for purposes of section 2401(b).

■ The government argues that because Augustine was aware of the bump on his palate at the time the Air Force dentists failed to diagnose or treat the bump, he was aware of his injury at that time. However, the injury alleged by Augustine is not the bump on his palate but the *development* of the bump from a controllable medical condition into incurable metastatic cancer.

The issue of accrual in this case thus depends upon when and if plaintiff discovered or through the exercise of reasonable diligence should have discovered that the failure of his doctors to diagnose, treat, or warn him led to his deteriorating physical condition. *Davis,* 642 F.2d at 331. That, in turn, depends upon whether the attending dentists properly diagnosed Augustine's condition and adequately informed him of the need to obtain prompt supplemental care, issues which go to the heart of Augustine's negligence action under the FTCA.

This case was before the district court on a motion to dismiss for want of subject matter jurisdiction. Because the jurisdictional issue is dependent upon the resolution of factual issues going to the merits, it was incumbent upon the district court to apply summary judgment standards in deciding whether to grant or deny the government's motion. That is, it was improper for the district court to grant the government's motion unless the relevant facts were not in dispute and the government was entitled to prevail as a matter of law. *Thornhill,* 594 F.2d at 733–34.

The district court did not properly apply that standard here. This action was dismissed on the basis of the pleadings and supporting affidavits. No findings of fact or conclusions of law were entered, and the district court conducted no evidentiary hearings. The moving papers, however, establish a clear conflict as to the central factual issues in the case. Augustine alleged and offered deposition testimony that the treating dentists expressed no concern about his condition, failed to refer him to the EENT clinic, and failed to make an appointment for him with EENT physicians when he asked to be referred. The government alleges and offers evidence that Augustine was promptly and adequately informed of the nature and seriousness of his condition and advised to seek further care, which he failed to do. In such circumstances, a grant of summary judgment on the merits would have been improper. It was thus improper for the district court to sustain the government's factual challenge to subject matter jurisdiction without conducting an evidentiary hearing on the merits.

The district court did not conduct the type of plenary hearing on the merits necessary to allow it to resolve the basic factual issues in the case. The cause is therefore reversed and remanded for determination of the relevant factual issues at trial.

## III. CONCLUSION

We hold only that the question of subject matter jurisdiction in this case is dependent on the resolution of the merits. In such cases it is both proper and necessary for the trial court first to resolve the merits of the claim to the extent necessary to allow the court to properly determine its own jurisdiction. The court below remains free to dismiss the action for lack of subject matter jurisdiction if, after proper consideration of the merits, it finds that Augustine's claim for damages against the United States accrued more than two years prior to the date on which he filed his administrative claim.

The order of the district court dismissing the action is REVERSED, and the case is REMANDED for further proceedings.