Charleen T. **RADDATZ** and Michael George **Raddatz**, Plaintiffs-Appellants,

v.

**UNITED STATES of America**, Defendant-Appellee.

No. 84–1542.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1984.

Decided Dec. 28, 1984.

---

Ian L. Mattoch, Honolulu, Hawaii, for plaintiffs-appellants.

J. Peter Axelrod, Richard L. Puglisi, Asst. U.S. Attys., Honolulu, Hawaii, for defendant-appellee.

Before HUG, TANG and SCHROEDER, Circuit Judges.

TANG, Circuit Judge:

## I. OVERVIEW

Charleen and Michael Raddatz appeal from the district court's summary judgment holding that their claims of medical malpractice against the United States are barred by the applicable two-year statute of limitations. 28 U.S.C. § 2401(b)(1976). The malpractice claims arise from the unsuccessful attempt by an Army physician to insert an intrauterine contraceptive device at Mrs. Raddatz' request, and the alleged subsequent failure by a Navy physician to recognize or treat symptoms of infection, ultimately resulting in a hysterectomy operation. We find that the district court failed to recognize the distinct nature of the Raddatzes' claims against the Army and the Navy and thus erred in finding that their claim against the Navy was barred by § 2401(b). We therefore reverse the summary judgment.

## II. FACTS

### A. *Alleged Malpractice*

The facts in this case are not in dispute. On February 28, 1977, Charleen Raddatz consulted with Dr. O'Donnell, Navy Physician, at the Navy Regional Medical Center, Pearl Harbor, Hawaii, regarding the choice and insertion of an intrauterine contraceptive device (IUD). After determining that the type of IUD that Mrs. Raddatz needed was not kept at his facility, Dr. O'Donnell referred Mrs. Raddatz to Tripler Army Medical Center.

Mrs. Raddatz went to the Army facility on the very same day (February 28, 1977). Dr. Arner, an Army physician, completed the procedure for insertion of an IUD into Mrs. Raddatz' uterus. Mrs. Raddatz experienced severe pain during and after the insertion. Dr. Arner waited a few minutes, and seeing no improvement, removed the IUD. Mrs. Raddatz saw the IUD when it was removed; it "was all bloody and seemed like there was tissue on it." Dr. Arner then told Mrs. Raddatz that he had perforated the right side of her uterus and that she would experience pain and cramping for a few days. He administered a shot of morphine at the hospital and gave her a prescription for pain killers.

Mrs. Raddatz made two subsequent visits to the Army facility's emergency room complaining of pain, cramping and bleeding. The emergency room doctor apparently noted in Mrs. Raddatz' record that the possibility of pelvic inflammatory disease existed.

On March 7, 1977, upon instruction of the emergency room doctor, she returned to see Dr. O'Donnell at the Navy Regional Medical Center, and complained of continued severe pain, discomfort and cramps. Dr. O'Donnell told Mrs. Raddatz that her symptoms were an acceptable side effect of the perforation of her uterus and that bleeding would be normal for 4–6 weeks. Dr. O'Donnell prescribed codeine for the pain. He did not prescribe antibiotics. On March 10, Mrs. Raddatz again saw Dr. O'Donnell who assured her that her symptoms were normal and gave her more pain killer. Further conversations took place, including the last actual consultation on March 14; in all the consultations, the Navy physician assured Mrs. Raddatz that her symptoms were normal and continued to prescribe pain killers.

On March 29, 1977, Mrs. Raddatz, unsatisfied with her treatment, consulted Dr. Williams, a civilian physician. By this time, she had additional symptoms of a slight fever, painful urination and weight loss. Dr. Williams prescribed antibiotics and later, after surgery, diagnosed her condition as an infection in the form of pelvic inflammatory disease (P.I.D.), thus con-

firming his original diagnosis. Ultimately, Dr. Williams performed a hysterectomy to eliminate scar tissue and pain allegedly caused by Dr. O'Donnell's negligent failure to prescribe antibiotics.

## B. *Judicial and Administrative Action*

On February 28, 1979, the Raddatzes filed a premature complaint in district court, alleging negligence against Dr. Arner and Dr. O'Donnell in two separate counts. This complaint was later dismissed without prejudice on November 13, 1979.

On March 1, 1979, the Raddatzes filed an administrative claim with the Naval Legal Services Office pursuant to the Federal Torts Claims Act (FTCA), alleging that Dr. O'Donnell negligently failed to treat Mrs. Raddatz for her pain and other symptoms. On March 5, 1979, the Raddatzes filed a claim with the U.S. Army Claims service, alleging liability based on Dr. Arner's negligent perforation of Mrs. Raddatz' uterus.

On January 18, 1980, the Army Claims Service sent a letter by registered mail, denying the Raddatzes' claim against the Army. On February 7, 1980, however, the Army Claims Service sent a letter stating in essence:

(1) that the Army would reconsider the Raddatzes' claim;

(2) that the claim regarding follow-up treatment by Navy physicians constituted an additional claim not encompassed by the claim before the Army; and

(3) that the Army's reconsideration action would "be coordinated with the efforts of the Navy."

On November 5, 1980, the Army sent a letter to the Raddatzes' attorney. It was sent by regular mail and was received on November 10, 1980. This letter, in substance, stated that:

(1) after reconsideration, the Army had determined that no basis for reconsideration existed;

(2) the Navy had concluded that no basis existed for favorable action on the claim before their agency; and

(3) that if the Raddatzes were "dissatisfied with the action taken on the claim" they had six months from the mailing of the letter to file suit under the FTCA in district court.

The Navy never sent a separate letter of denial.

The Raddatzes filed a second complaint in district court on December 9, 1980. It was voluntarily dismissed without prejudice on February 4, 1981, allegedly to allow the Raddatzes to pursue further administrative remedies.

On June 12, 1981, over seven months from the purported denial letter of November 5, 1980, the Raddatzes filed the complaint in the instant suit. This complaint predicates liability solely on the actions of Navy personnel in their alleged negligent failure to treat Mrs. Raddatz for pelvic inflammatory disease. The Raddatzes prayed for damages for pain and suffering, mental distress, and Michael Raddatz' loss of his wife's society.

The United States answered, and filed a motion for summary judgment on June 29, 1983. The United States asserted that the Raddatzes failed to comply with the two requirements of 28 U.S.C. § 2401(b), the applicable statute of limitations:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The district court granted defendant's motion on December 8, 1983. The court, in its findings of fact and conclusions of law, found that:

(1) The Raddatzes' cause of action against both the Army and Navy accrued on February 28, 1977, the date of the negligent perforation of her uterus;

(2) The letter from the Army received by Raddatz on November 10, 1980, was an effective final denial of the Navy claim;

Based on these two findings, the court concluded that the Raddatzes failed to comply with both the two-year agency filing requirement and the six-month district court filing requirement. Their claims were therefore barred by § 2401(b).

## III. DISCUSSION

### A. Standard of Review

■ The district court's grant of summary judgment, based on undisputed facts, held that the Raddatzes' claim was barred as a matter of law. We therefore review the summary judgment de novo, *Turner v. Prod*, 707 F.2d 1109, 1114 (9th Cir.1983), *cert. granted*, —— U.S. ——, 104 S.Ct. 1412, 79 L.Ed.2d 739 (1984); our task is identical to that of the trial court. *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483, 1487 (9th Cir.1983). Viewing the evidence most favorably to the party against whom summary judgment was granted, we must determine whether the moving party was entitled to judgment as a matter of law. *Id.*

### B. Accrual of the Navy claim

■ The district court, relying on *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) and *Ashley v. United States*, 413 F.2d 490 (9th Cir.1969), held that the Raddatzes' claims against the Army and Navy accrued on the date of insertion of the IUD—February 28, 1977. The court treated the two claims as one because "they arose out of the same operative facts, namely the negligent puncturing of Plaintiff's ... uterus ..." We hold that the court's failure to recognize properly the Raddatzes' claims against the Army and Navy as separate claims, based on separate acts of negligence, led the court to apply the incorrect standard for determining when the Raddatzes' claim accrued against the Navy.

The Raddatzes undisputedly filed two separate claims against two separate agencies. In the Army claim, the Raddatzes alleged negligence by Army Doctor Arner for the negligent perforation of Mrs. Raddatz' uterus during insertion of an IUD. The Navy claim, however, alleges negligence by Navy Doctor O'Donnell in his subsequent failure to provide medical treatment for Mrs. Raddatz' continued pain and other symptoms from the perforation. The complaint in the present action is limited to the Navy doctor's alleged failure to warn of, or prescribe medication for, the risk of infection after the perforation occurred. It is a separate claim involving separate doctors, separate facilities, and acts of negligence different from the Army claim. The Raddatzes complained of a negligent affirmative act by the Army doctor, but the claim against the Navy doctor is predicated upon an alleged failure to warn of infection, and failure to diagnose any complications and prescribe antibiotics for Mrs. Raddatz's perforated uterus, a preexisting condition at the time she returned to the Navy facility requesting treatment for her pain.

■ The fact that the same damage was alleged as a result of the separate acts of the Army and Navy does not fuse or merge the two claims into one. It is an elementary proposition of tort law that two separate acts of negligence may combine to create one injury, and joint liability on the part of the tortfeasors. *See generally*, W. Prosser, *Law of Torts* § 52, p. 315–16 (4th ed. 1971).

The district court's application of *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) and *Ashley v. United States*, 413 F.2d 490 (9th Cir.1969) to the Navy claim is therefore misplaced. In *Kubrick*, the Court held that a cause of action for medical malpractice accrues under the FTCA on the date when the plaintiff discovers the injury and its cause. Accrual does not "await awareness by the plaintiff that his injury was negligently inflicted." 444 U.S. at 123, 100 S.Ct. at 360. The Court essentially held that a po-

tential plaintiff has the duty to start investigating the legal liability of the defendant when he knows he has been injured and "who has inflicted the injury." *Id.* at 122, 100 S.Ct. at 359. *Ashley* holds that a claim does not wait to accrue until a party knows the precise extent of an injury. 413 F.2d at 493.

Factually, *Kubrick* and *Ashley* involved affirmative acts of negligence inflicting clearly identifiable injuries. In *Kubrick,* the allegation was that the treatment of the plaintiff's infection with improper antibiotics resulted in the plaintiff's partial loss of hearing. 444 U.S. at 113–14, 100 S.Ct. at 354–55. In *Ashley,* the allegation was that a nerve was contacted during an unsuccessful attempt to take a blood sample, which resulted in immediate swelling and pain in the plaintiff's arm. 413 F.2d at 491–2. The *Ashley* court expressly pointed out that the plaintiff made no assertion of additional negligent acts after the blood test. *Id.* at 493. *See also, Davis v. United States,* 642 F.2d 328 (9th Cir.1981) (plaintiff paralyzed shortly after polio vaccine injection). In these cases, "the *existence* of the injury was obvious, and the statute of limitations began to run immediately upon the discovery of the cause." *Augustine v. United States,* 704 F.2d 1074, 1078 (9th Cir.1983).

■ We find that the *Kubrick* standard applies only to the Army claim in this case. That claim was predicated upon the negligent insertion of the IUD, resulting in a perforation of Mrs. Raddatz's uterus, immediately brought to her attention on February 28, 1977. Under the *Kubrick* standard, her claim against the Army accrued on that date, and is now barred under § 2401(b) for failure to file a claim with the Army within two years of accrual.

■ The Navy claim, however, is not predicated on the insertion of the IUD. Rather, it is based on the development of an infection in and around the perforation, allegedly caused by the negligence of Navy doctors in failing to diagnose or warn Mrs. Raddatz or to treat the perforation to insure that it did not develop into a more serious condition. When a claim of malpractice is based on a failure to diagnose, warn, or treat a patient for a pre-existing injury, rather than affirmative conduct creating a new injury, "identification of both the injury and its cause may be more difficult for a patient," *Augustine,* 704 F.2d at 1078, and the *Kubrick* standard does not apply. In this type of case, a claim accrues under § 2401(b) when:

> the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing problem into a more serious condition...

*Augustine,* 704 F.2d at 1078. The *Augustine* standard is the applicable legal standard for Mrs. Raddatz' claim against the Navy.

■ Under this standard, Mrs. Raddatz' claim accrued on March 29, 1977, the date her private physician made her aware that her perforated uterus had developed an infection. Mrs. Raddatz was simply not aware of her more serious condition until it was explained to her by Dr. Williams on that date. In fact, when she tried to find out why her condition was getting worse, the Navy doctor repeatedly assured her that her condition was a normal consequence of the perforated uterus. Such assurances may be reasonably relied on by a patient. *See Reilly v. United States,* 513 F.2d 147, 150 (8th Cir.1975) (doctor's statements assuring that complications were normal occurrence of previous treatment are relevant to plaintiff's reasonable diligence); *Tyminski v. United States,* 481 F.2d 257, 264–65 (3d Cir.1973), *Toal v. United States,* 438 F.2d 222, 225 (2d Cir. 1971).

The claim filed against the Navy on March 1, 1979, is therefore timely within § 2401(b).

In addition to the two year requirement for filing of administrative claims, § 2401(b) also requires that an action must be filed in district court:

> within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The district court found that the Army letter dated November 5, 1980, was an effective final denial of the Navy claim and that the Raddatzes failed to file within the six month period following their receipt of the letter on November 10, 1980.

The Raddatzes claim that the district court erred in construing the November 5th letter as a valid denial of the Navy claim. They assert that the Navy has never made a valid final denial of the Navy claim, and therefore the filing in district court on June 12, 1981, was timely.

■ We find the Army letter of November 5, 1980, insufficient to be considered a valid final denial of the Navy claim as a matter of law. First, the letter was not "sent by certified or registered mail." Although the letter was undisputedly received, 28 U.S.C. § 2401(b) and § 2675(a) are explicit in their requirement that the agency denying a claim must send it certified or registered mail. A letter purporting to deny a claim by regular mail would raise serious doubts as to the letter's effectiveness, in light of the clear requirement of the statutory provisions.

We need not, however, decide whether this flaw alone invalidates the November 5th letter. In addition to this flaw, the letter of November 5th, purporting to deny the Navy claim, was not mailed by "the agency to which it was presented." 28 U.S.C. § 2401(b). In fact, the record shows no correspondence from the Navy purporting to deny the Navy claim.

The November 5th letter from the Army, however, did state that "[t]he Navy has likewise concluded that there is no basis for favorable administration , of their claim." The issue, then, is whether the Army had authority to make this denial since it was not the agency to which the claim was presented. The regulatory scheme for administering claims under the FTCA does allow designation of a single agency to administer a claim when more than one agency is involved in the events giving rise to the claim. 28 C.F.R. § 14.-2(b)(2) (1981). But these regulations specifically require the agencies

... to designate the single agency which will thereafter investigate and decide the merits of the claim ... the designated agency shall notify the claimant that all future correspondence concerning the claim shall be directed to that Federal agency. *Id.*

■ Here, the Raddatzes never received a notice designating a single agency. Appellee claims that the February 7, 1980 Army letter to the Raddatzes' counsel was sufficient to meet § 14.2(b)(2). This letter merely states that the claim against the Navy regarding negligent followup treatment constituted an additional claim, not encompassed by the claim the Army was considering, and that if an action was filed against the Navy, the Army's "reconsideration action will be coordinated with the efforts of the Navy." This language does not satisfy § 14.2(b)(2). It did not put the Raddatzes on notice that all future correspondence should be directed to the Army, nor did it indicate that the Army was authorized to speak for the Navy. Since the Raddatzes had no notice of a designation of one agency, the Army was not empowered to deny the Navy claim.

■ The United States, however, maintains that the Raddatzes failed to reveal that they were filing claims against both the Army and Navy upon filing, in contravention of 28 C.F.R. § 14.2(b)(3). If so, final action of one agency

is conclusive on the claims presented to the other agencies in regard to the time required for filing suit set forth in 28 U.S.C. 2401(b). 28 C.F.R. § 14.2(b)(3).

The Raddatzes correctly point out that the section is not applicable, because as previously discussed, the claims arose out of separate incidents, at different medical facilities. Also, the agencies had notice of separate claims against each through the premature complaint filed in district court on February 28, 1979, which was pending for nine months before its dismissal. *See Williams v. United States,* 693 F.2d 555 (5th Cir.1982) (itemized claim for damages in state court complaint filled gaps in timely administrative filing such that agency

was provided notice and § 2401(b) was satisfied). Additionally, a letter from the Army to the Navy of February 20, 1980, acknowledging the pending claim at the Navy, and correspondence from the Raddatzes' attorney to Navy attorneys of August 10, 1979, mentioning negligence of both Dr. O'Donnell and Dr. Arner, provided the agencies sufficient notice of the pending claims. *See Warren v. U.S. Dep't of Interior Bureau of Land Management,* 724 F.2d 776 (9th Cir.1984) ("minimal notice" to agency sufficient under regulations).

## IV. CONCLUSION

The district court's conclusion that the Raddatzes' claim against the Navy accrued on the day that the Army physician perforated her uterus is reversed under *Augustine.* The district court's finding that a valid final denial of the Navy claim was made on November 5, 1979, and that the Raddatzes' failure to file in district court within six months from that date is reversed. The Navy claim is not barred under § 2401(b). The summary judgment is reversed, and the case is remanded for further proceedings.