**Floyd L. WEHRMAN, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 87–5030–MN.**

United States Court of Appeals,
Eighth Circuit.

Argued June 10, 1987.

Decided Oct. 8, 1987.

Robert W. Rischmiller, Minneapolis, Minn., for appellant.

Robert M. Small, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before McMILLIAN, Circuit Judge, GIBSON, Circuit Judge, and ROSENN,* Senior Circuit Judge.

ROSENN, Senior Circuit Judge.

In this appeal from a grant of summary judgment, the plaintiff, Floyd L. Wehrman, asserts that his claim for damages arising out of alleged malpractice by a Veterans Administration hospital is not barred by the two-year limitation period set forth in 28 U.S.C. § 2401(b),[1] because the allegedly tortious continuing treatment did not end until some time within two years prior to his complaint. Because we disagree with the district court's determination that the "continuous treatment" doctrine is inapplicable in this case, we will vacate the district court's order and remand the case for further proceedings.

---

* Max Rosenn, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

1. That statute provides: "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C.A. § 2401 (West Supp.1987).

## I.

The essential facts are not in dispute. Wehrman is completely disabled by organic brain syndrome caused by an injury received in military service. From 1962 through 1984, he received medical treatment from the Minneapolis Veterans Administration Medical Center (the VA). Various VA physicians treated him over the years.

In 1962 Wehrman began to experience throat and chest pain. He consulted VA physicians, who advised him on several occasions that medical, not surgical, treatment was preferred, surgery being unduly dangerous. Wehrman agreed to the recommended medical regime. Despite several years of medical treatment, his condition worsened. In September 1981, he was admitted to the Medical Center, complaining of digestive and stomach problems, chest pain, and difficulty swallowing. The VA doctors diagnosed hiatal hernia, Schatzke's ring dilated, seizure disorder, and reflux esophagitis. He was hospitalized again that winter, when a VA physician again advised him that surgery presented a grave risk and that medical management was the only feasible alternative.

Wehrman subsequently received outpatient treatment, including barium swallow examinations, an esophogram, an endoscopy, medication, and frequent reevaluations of the reflux. His condition nevertheless continued to deteriorate.

By January 1984 Wehrman's condition allegedly had deteriorated to the point where he was unable to eat and could barely breathe. He consulted the chief of surgery at the Medical Center, who advised him once again that the surgery was unduly dangerous. In February 1984, however, Wehrman consulted a private physician, Dr. Carl Brown, who referred him to Dr. Mark Schmidt. Schmidt performed an endoscopy and diagnosed severe esophagitis with ulcerations, a sphincter injury, and a large hiatus hernia. He referred Wehrman to Dr. John Linner for a surgical assessment. Linner advised Wehrman that surgery was a viable alternative.

Wehrman chose to undergo the surgery, and Dr. Linner performed it in March 1984 at the Metropolitan Medical Center in Minneapolis. Wehrman states that the results were "tremendous," eliminating his eating and sleeping problems and pain.

Wehrman subsequently filed an administrative claim as required by the Federal Torts Claims Act (FTCA), 28 U.S.C. § 2675 et seq., before the commencement of court litigation. The VA denied his claim and he brought the present action. In his complaint, Wehrman alleged:

> From 1962 through and including March 1984, various agents, servants and employees of the Veterans Administration ... negligently and otherwise wrongfully failed to perform reasonable and necessary examinations, diagnostic tests and treatment and otherwise negligently and wrongfully failed to obtain reasonable and necessary surgical [sic] and/or other surgical consultations with respect to the medical condition of Plaintiff including esophagitis, hiatus hernia with reflux and related medical conditions.... Defendant through its agents, servants and employees further negligently and otherwise wrongfully failed to inform the plaintiff of alternative methods of treating said medical conditions.... As a direct result of the negligence of defendant, plaintiff sustained a progressive worsening of his medical condition, suffered great pain of body and mind ... was prevented from transacting his business and personal activities and ... has sustained medical expenses....

He sought one million dollars in damages.

The Government moved for summary judgment on the ground that Wehrman's claim was barred by the statute of limitations. The district court granted the motion and entered judgment for the Government, 648 F.Supp. 386.

## II.

Tort claims against the United States are time barred if not presented in writing to the appropriate Federal agency within two years after such claim accrues. *See* note 1 *supra.* When a claim accrues is

a question of federal law. *Snyder v. United States*, 717 F.2d 1193, 1195 (8th Cir. 1983). In general, a claim accrues at the time of the plaintiff's injury, but medical malpractice cases are an exception to this rule. *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 118, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979)). This court has focused on "determining the time [the plaintiff] actually knew, or in the exercise of reasonable diligence should have known, the cause and existence of his injury." *Snyder*, 717 F.2d at 1195. In the present case, Wehrman filed his administrative claim on October 24, 1984. The question presented on this appeal is thus whether his claim accrued prior to October 24, 1982.

## A.

■ Wehrman first asserts that the Government is precluded from raising a statute of limitations defense because the VA concealed material facts. Such concealment, if fraudulent, prevents the running of the statutory period until the plaintiff discovers or by reasonable diligence could discover the basis for the claim. *Diminnie v. United States*, 728 F.2d 301, 305–06 (6th Cir.), *cert. denied*, 469 U.S. 842, 105 S.Ct. 146, 83 L.Ed.2d 85 (1984). On appeal, Wehrman contends that the VA physicians wrongfully concealed alternative surgical methods of treatment and persuaded him that his worsening condition was the natural progression of the disease. He claims he did not discover the truth, nor could he in the exercise of due diligence have done so, he asserts, until 1984, when he sought help outside the VA.[2]

■ The district court rejected this argument because on many occasions over the years Wehrman had requested and received free access to his VA medical records. Wehrman, however, claimed that these records were used by him in connection with a lawsuit of his mother against the State of Minnesota. Furthermore, they did not contain information regarding sur-

gical alternatives, the information Wehrman argues was concealed.

Even if the disclosure of his medical records is therefore irrelevant, Wehrman's allegations of the VA's failure to inform him properly about surgical alternatives, if true, would establish at most negligence, not deliberate or fraudulent concealment. That negligence might be sufficient to supply a cause of action, but it would not meet the higher burden of a showing of fraud required to preclude a statute of limitations defense. The Government therefore is not barred by the VA's alleged concealment from raising an untimeliness defense.

## B.

■ Under the continuing treatment doctrine, a plaintiff's cause of action does not accrue until the tortious continuing treatment ends, even if the plaintiff is aware of the facts constituting negligence before that time. Wehrman contends that the VA's repeated advice not to seek surgery, given during his medical treatment, continued well past October 1982.

In *Page v. United States*, 729 F.2d 818 (D.C. Cir.1984), the plaintiff sued the VA in 1981 for negligently subjecting him to harmful drug therapy from 1961 to 1980. He had sued the VA unsuccessfully for malpractice in 1972, which established his knowledge of the tortious conduct as of that time. The court of appeals held that the 1972 judgment was res judicata with respect to the allegedly tortious conduct occurring prior to 1972, but that the cause of action arising out of later conduct did not accrue until treatment terminated in 1980: "Since usually no single incident in a continuous chain of tortious activity can 'fairly or realistically be identified as the cause of significant harm,' it seems proper to regard the cumulative effect of the conduct as actionable." 729 F.2d at 821–22 (quoting *Fowkes v. Pennsylvania R.R.*, 264 F.2d 397, 399 (3d Cir.1959)). Wehrman asserts that here, as in *Page*, the claim is not based on a single incident of allegedly neg-

---

**2.** At oral argument, counsel for the plaintiff represented that when his client consulted him in 1983, counsel advised him that he could ob-

tain independent medical advice without jeopardizing his VA treatment.

ligent conduct; rather, he alleges a continuous course of improper treatment. As the injury developed gradually, the cumulative impact of all the years of treatment was not complete before October 1982.

Not every court has applied the continuing treatment doctrine as expansively as in *Page*, however. In medical malpractice actions in which the alleged negligence consists of failure to take action, not an affirmative negligent act, factors other than the time of the end of treatment have been considered relevant. One is the deterioration of the plaintiff's condition. In *Raddatz v. United States*, 750 F.2d 791 (9th Cir.1984), the Ninth Circuit stated that a claim based on failure to diagnose, warn, or treat a patient for a pre-existing injury accrues when "the patient becomes aware or through the exercise of reasonable diligence should have become aware of the development of a pre-existing condition into a more serious condition." *Id.* at 796 (quoting *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir.1983)). The court added, however, that because the physician had repeatedly assured the plaintiff that her worsening condition was a normal consequence of a medical procedure, her failure to file suit for two years and one day did not bar suit. *See also Green v. United States*, 765 F.2d 105, 109 (7th Cir.1985) (plaintiff should have become aware of injury from excessive radiation at time VA allegedly denied him treatment for injury).

Other courts have looked at the gravity of the injuries in fixing the date of accrual. In *Sanders v. United States*, 551 F.2d 458 (D.C.Cir.1977) (per curiam), the D.C. Circuit stated that "when the facts [become] so grave as to alert a reasonable person that there may have been negligence related to the treatment received, the statute of limitations [begins] to run against the appellant's cause of action." *Id.* at 460 (quoting *Reilly v. United States*, 513 F.2d 147, 150 (8th Cir.1975)). *See also Drazan v. United States*, 762 F.2d 56, 59 (7th Cir.1985); *West v. United States*, 592 F.2d 487, 492–93 (8th Cir.1979).

■ We decline to state today whether this circuit will adopt either the deterioration of the plaintiff's condition or the gravity of the plaintiff's injury as factors limiting the scope of the continuing treatment doctrine more narrowly than its statement in *Page*. Neither is before us. The district court in the present case carefully traced both lines of authority, but applied its conclusions on these issues only to its inquiry whether Wehrman was reasonably diligent in filing his claim, Memorandum and Order at 18–19, an analysis which, as we explain below, is inappropriate in the present case. Moreover, the question of when a patient became aware of, or through the exercise of reasonable diligence should have become aware of, the deterioration of his or her condition or of the seriousness of the injury, is one of fact. *See Augustine*, 704 F.2d at 1078–79. As this case is before us on appeal from a grant of summary judgment, we must reverse if there is any genuine issue of material fact, giving the plaintiff as the non-moving party the benefit of all reasonable inferences and viewing the facts of record in a light most favorable to him. *Hartford Accident & Indemnity Co. v. Stauffer Chemical Co.*, 741 F.2d 1142, 1144–45 (8th Cir.1984); *Stokes v. Lokken*, 644 F.2d 779, 782 (8th Cir.1981).

■ Although Wehrman does not dispute the severity and deterioration of his condition or his knowledge thereof, there is the additional factor of the VA staff's alleged repeated advice to him that surgery was not a viable option. This additional fact is highly relevant and critical to the question of whether Wehrman should have suspected negligence. In any case, we are hard pressed to see how Wehrman's awareness of the deterioration and severity of his condition could without more make him aware that surgery was feasible.

The district court based its rejection of the continuing treatment doctrine in this case on Wehrman's having been treated by many different VA doctors over the twenty-two years in question. The district court stated that the application of the doctrine requires "the continued existence of the personal, confidential physician-patient relationship." Memorandum and Order at 21 (quoting *Page*, 729 F.2d at 823 n. 36, quot-

ing *Ciccarone v. United States*, 486 F.2d 253, 257 (3d Cir.1973)). We disagree with the implication that only a relationship with a single physician will satisfy this standard. The court in *Page* continued:

> A limitation period is not tolled by "merely intermittent" medical services, *Holdridge v. Heyer-Schulte Corp.*, [440 F.Supp. 1088, 1098 (N.D.N.Y.1977)], or "merely occasional hospital visits at substantial intervals." *Kossick v. U.S.*, [330 F.2d 933, 936 (2d Cir.1964)]. It has also been held that "treatment from succeeding government physicians" does not interrupt the running of the limitation when the personal relationship with the physician charged with malpractice has ended and that physician "is not claimed to have acted in direct concert with the succeeding physicians." *Brown v. United States*, 353 F.2d 578, 580 (9th Cir. 1965) (a case arising under the Federal Tort Claims Act). See also *Camire v. United States*, 535 F.2d 749, 750 (2d Cir. 1976); *Hulver v. United States*, 562 F.2d 1132, 1137 (8th Cir.1977), *cert. denied*, 435 U.S. 951, 98 S.Ct. 1576, 55 L.Ed.2d 800 (1978). But see *Accardi v. United States*, 356 F.Supp. 218, 221, 222 (S.D.N.Y.1973) (treatment at different public hospitals over four-year period sufficient to toll).

729 F.2d at 823 n. 36.

Wehrman has not alleged "merely intermittent" medical services. Although he was treated by several different VA doctors, all were at the same medical facility and continued him on the same treatment. He claims that none ever suggested that surgery was an appropriate alternative. *Brown, Camire*,[3] and *Hulver* all dealt with alleged malpractice by a single physician who stopped treating the plaintiff more than two years prior to filing; Wehrman, by contrast, does not complain about the action or inaction of any specific physician, but of the plan of treatment at the same hospital in which they all participated. *Ciccarone* is similarly distinguishable. In that case, the plaintiff had not alleged any

negligence in two years before filing; he complained of negligence by a specific neurologist on a specific date. Wehrman alleges continuing negligence with respect to the opportunity for surgical options, not just a continuing relationship. The VA medical staff continued to advise him against surgery after 1982. The final paragraph of the *Page* footnote upon which the district court relied suggests that continuous treatment by a hospital, not just by a single physician, would suffice to toll the running of the statutory period:

> It is unclear from Page's complaint whether he was receiving continuous treatment from any particular VA physician *or hospital;* he alleges only that VA engaged in continuous tortious conduct. We thus are unable to determine whether the continuous-treatment doctrine may be applicable to this case. That, however, will be for the district court to consider upon remand of this case.

729 F.2d at 823 n. 36 (emphasis added). *See also Camire, supra* n. 2.

In *Kossick v. United States*, 330 F.2d 933 (2d Cir.), *cert. denied*, 379 U.S. 837, 85 S.Ct. 73, 13 L.Ed.2d 44 (1964), the Second Circuit recognized the dilemma of a patient in the process of treatment who feels something may be wrong, yet, because the treatment is not complete, does not give up hope of its eventual success: " 'It would be absurd to require a wronged patient to interrupt corrective efforts by serving a summons on the physician or hospital superintendent.' ... and this is not altogether without application when as here the summons would be served on the United States Attorney." *Id.* at 936 (quoting *Borgia v. City of New York*, 12 N.Y.2d 151, 156, 237 N.Y.S.2d 319, 321–22, 187 N.E.2d 777, 779 (1962)) *quoted in Page*, 729 F.2d at 823 n. 36. The rationale of *Kossick* applies no less where, as here, more than one physician participated in the treatment.

### C.

▮ The Government argued to the district court that even if the facts of this

---

**3.** Moreover, the Second Circuit in *Camire* stated that it rejected the continuing treatment theory "since treatment was not continuous by the same doctor (or an associate) *or the same hospital* for the required period." 535 F.2d at 750 (emphasis added).

case fall within the continuing treatment doctrine, that doctrine is no longer viable following the Supreme Court's decision in *Kubrick v. United States*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). *Kubrick*, contended the government, shifted the focus to the exercise of reasonable diligence by the plaintiff in discovering the injury. The district court rejected this suggestion that the continuing treatment doctrine had been completely eviscerated by *Kubrick*. Memorandum and Order at 16 n. 3.

We agree with the district court's conclusion, and note further that this circuit has stated that "[w]here the tortious conduct is of a continuing nature, the *Kubrick* rule does not apply." *Gross v. United States*, 676 F.2d 295, 300 (8th Cir.1982). *Gross* was not a medical malpractice case, one basis for its distinction of *Kubrick*, which involved injuries arising from treatment with an antibiotic. Nevertheless, the *Gross* rationale is apt, because it is the continuing nature of the VA's conduct, not its medical character, that is at issue in the present posture of the case.

The Government makes much of Wehrman's possession of his medical records and his long acquaintance with his attorney and with malpractice actions. Wehrman requested records twice: once in 1981 with respect to a claim against the State of Minnesota for wrongfully admitting him to St. Peter's State Hospital, and once in relation to a medical malpractice action against the University of Minnesota on behalf of his mother; never for purposes of this suit. In any case, his medical records and his relationship with his attorney could have provided him only with information about his treatment, condition, and his legal rights; they imparted no information about the relative merits of surgery and therefore could not have alerted Wehrman to any negligence by the VA in failing to inform him about the surgical options.

Moreover, any notice Wehrman received was offset in large part, if not entirely, by the VA staff's repeated advice to him that surgery was out of the question. In a deposition taken July 16, 1986, Wehrman stated that he had "asked seven times to see—to have them do surgery on me and get this over with and done. And seven times they told me, 'If we do, we'll kill you. You're in too bad a shape.' The eighth time being ... the head surgeon." Deposition of Floyd L. Wehrman at 168.

We therefore reject the district court's conclusion that Wehrman's claim is barred because he failed to exercise reasonable diligence in becoming aware of a possible claim. We add in passing that even if a diligence inquiry would apply in a continuing treatment context, the VA's affirmative actions to dissuade Wehrman from surgery ought at least to be a factor, along with his knowledge of the deterioration and severity of his condition, in analyzing whether Wehrman knew or should have known that there may have been negligence. This is particularly so at the summary judgment stage, as there is no evidence that Wehrman knew or should have known whether the doctors' representations accorded with recognized medical and surgical practice.

### III.

■ In sum, the district court carefully and exhaustively analyzed the law and the record in this case. We are constrained, however, to hold that the district court erred in its basis for rejection of Wehrman's assertion of the continuous treatment doctrine, the absence of a continuous doctor-patient relationship, was erroneous, and that to the extent that assertion of the doctrine depends upon whether Wehrman knew or should have known prior to October 1982 that there may have been negligence with respect to the advice on his surgical options, there remain genuine issues of material fact necessary to that determination.[4]

---

**4.** Even if a factfinding proceeding revealed that Wehrman's claim accrued prior to October 1982, we note that under *Page* he would still have a cause of action for any negligent conduct or failure to act continuing after October 1982. *Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 361 (3d Cir.1986); *Page*, 779 F.2d at 821.

Accordingly, the judgment of the district court will be vacated and the matter remanded for further proceedings consistent with this opinion.

JOHN R. GIBSON, Circuit Judge, concurring and dissenting.

I respectfully dissent from the court's opinion today, but agree that Wehrman's claims for events that occurred within two years before the filing of his administrative claim are not barred by the statute of limitations.

I agree with the district court on its analysis of the continuing treatment rule for the reasons stated in its opinion. Plaintiff knew that his condition had become more serious and accordingly had some duty to seek additional medical information. *United States v. Kubrick*, 444 U.S. 111, 122–23, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259 (1979).

Wehrman has separate and independent claims for events occurring within the two years before he filed his claim on October 24, 1984, and specifically alleges negligent advice against surgery. The government did not respond to Wehrman's argument that acts within the two years before the filing of the claim would not be barred. *See Page v. United States*, 729 F.2d 818, 821 (D.C.Cir.1984).

The record reveals that Wehrman saw Veterans Administration doctors February 7, September 26, and November 28, 1983. On January 3, 1984 an endoscopy was performed. In Wehrman's interrogatory answers and affidavit filed in response to the motion for summary judgment, he states that Veterans Administration doctors at the out-patient clinic and the chief of surgery told him in February, 1984 that if they operated it would probably kill him and "you have too many problems for us to operate." (D.R. 12, 36).

I would remand only with respect to those claims based on events occurring within two years before the date that Wehrman filed his administrative claim with the Veterans Administration or October 24, 1984.