**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TOKIO MARINE NICHIDO FIRE INSURANCE CO. LTD.; FORTIS CORPORATE INSURANCE SA; WINTERTHUR EUROPE VERZEKERIGEN NV; AEGON SCHADEVERZEKERINGEN NV; GENERAL SCHADEVERZEKERING-MAATSCHAPPIJ NV; GERLING-KONZERN ALLGEMEINE VERSICHERUNGS-AG; AVERO SCHADEVERZEKERING BENELUX NV; AGF BELGIUM INSURANCE N.V.; SOMPO JAPAN INSURANCE, INC., <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant-Appellee. | No. 09-35494 <br><br> D.C. No. CV 06-929-JE <br><br> MEMORANDUM [*] |

On Appeal from the United States District Court
for the District of Oregon
Honorable John Jelderks, Magistrate Judge, Presiding

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted May 3, 2010
Portland, Oregon

Before: KLEINFELD, BEA, and IKUTA, Circuit Judges.

The discretionary function exception applies to "a federal agency or an employee of the government." 28 U.S.C. §2680(a). The discretion was exercised in this case by the Navy, a federal agency, so we need not resolve whether Crowley or any of its personnel should or could be treated as employees of the federal government. There was no evidence that failure to test the fuel oil proximately caused the soot to be deposited on the Mazdas, so any issue of fact as to the testing would not be material.

The district court did not abuse its discretion in deciding what ought to be done about the delayed production of documents.

The district court applied the proper standard of review to the Rule 12(b)(1) motion. See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000). The jurisdictional and substantive issues are not "so intertwined that the question of jurisdiction is

dependent on the resolution of factual issues going to the merits." Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir. 1983).

The Navy itself made the decision that the ship, which was on full operating status and under the command of the Navy subject to the Navy Sealift Command Standard Operating Manual, should be "maintained in the highest state of readiness and operation" while in port on a 24-hour-a-day basis. Contract between Crowley Liner Services and the Maritime Administration § 7.3.12.8. According to the testimony of the captain of the ship, the captain would require both boilers to be kept on (absent an emergency) when it was required under Navy policy to maintain readiness to set sail immediately and without delay. The discretionary function exception applies to an action undertaken by government mandate, because such "action will be deemed in furtherance of the policies which led to the promulgation of the regulation." United States v. Gaubert, 499 U.S. 315, 323 (1991). The readiness command was an exercise of a discretionary function grounded in a political policy addressing military readiness of a military ship. See Sutton v. Earles, 26 F.3d 903, 907 (1994).

3

Tokio Marine argues based upon the engineer's testimony at page 88 of his deposition that the engineer had discretion to shut down a boiler and let it go cold while in port. The deposition, however, does not support that inference. The engineer was asked in general about taking a boiler off line to bottom blow, not whether he was permitted to let a boiler go cold while the ship was in port. The captain of the ship declared that the ship could not make full power with one of her steam boilers shut down and "I would *not* have permitted *either* of the ship's two boilers to be shut down intentionally except in the event of an emergency, that is, an emergency that would have threatened the ship, her cargo, her crew, and/or her mission unless the boiler was shut down." That statement was specifically addressed by the captain to "the situation and under the circumstances present while the vessel was in [the port of] Antwerp," unlike the engineer's testimony. The captain's declaration to this effect was uncontradicted by any other evidence.

The district court therefore correctly determined that the United States has not waived its sovereign immunity.

**AFFIRMED.**

4