**Steven W. WINTER, a single person,
Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

**No. 99–16113.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 17, 2000

Filed April 2, 2001

As Amended on Denial of Rehearing
May 25, 2001.

Steven M. Friedman (argued) and Dena Rosen Epstein, Begam, Lewis, Marks & Wolfe, Phoenix, Arizona, for the plaintiff-appellant.

William G. Cole (argued), U.S. Department of Justice, Civil Division, Washington, D.C., for the defendant-appellee.

Before: KOZINSKI, HAWKINS, and BERZON, Circuit Judges.

MICHAEL DALY HAWKINS, Circuit Judge:

Steven W. Winter appeals the district court's grant of summary judgment in his medical malpractice action pursuant to the Federal Tort Claims Act ("FTCA"), regarding his participation in a research study on paraplegics conducted by the Department of Veterans' Affairs (VA). We agree with the district court that Winter's FTCA claim did not accrue more than two years before the filing of Winter's administrative complaint. However, because of the unusual procedural posture of this case, we reverse the district court's grant of summary judgment and remand for further proceedings.

*Background*

Steven Winter, a paraplegic, agreed in 1983 to participate in an experimental program conducted by the VA Medical Center in Cleveland, Ohio. The program, directed by Dr. E.B. Marsolais, involved the implantation of electrodes into the legs of paraplegics in an attempt to restore their ability to walk. The VA implanted a series of electrodes in Winter's legs between 1983 and 1986.

Winter was hospitalized in 1989 in San Clemente, California, with cellulitis, an infection in his left leg. Winter informed the San Clemente doctors of his participation in the electrode project, and suggested that his cellulitis might be related to the electrode implants. San Clemente doctor Darshama Kadakia then contacted Dr. Marsolais, who explained that only two of his subjects had previously experienced cellulitis, and that neither case related to the implantation of electrodes. Marsolais also stated that the electrodes could remain implanted for as long as twenty years. Dr. Kadakia informed Winter of this conversation, and did not conduct any surgery to remove the electrodes.

In 1994, Winter's infections became more severe. He has had twenty-five surgeries since then to remove the electrodes.

Winter filed an administrative claim with the VA in July 1994, alleging that his injuries resulted from the VA's negligent operation of its electrode program. The VA initially denied Winter's claim on May 23, 1995. Pursuant to a request for reconsideration, the VA again denied Winter's claim in a letter they allege to have mailed on January 31, 1996. Winter claims that he never received this letter. On January 17, 1997, the VA, pursuant to Winter's inquiries, sent him a letter informing him that his claim had been denied a year earlier.

Winter filed this action on July 12, 1997, alleging violations of the FTCA. The government moved for summary judgment on three grounds: (1) Winter did not file an administrative claim within two years after his cause of action accrued; (2) Winter did not timely file his request for reconsideration; and (3) Winter did not timely file his complaint after the VA denied his request for reconsideration.

The district court concluded, with respect to the first ground, that Winter "as of January, 1989, possessed the facts sufficient to prompt a reasonable person to seek legal advice." However the court concluded that Winter may have "reasonably relied on Dr. Marsolais." Therefore, the court found that the government had failed to establish that Winter's cause of action accrued before July 21, 1992, and that Winter's administrative claim was timely.

The district court granted the government's motion on the second ground. The court concluded that, because Winter had mailed his request for reconsideration to the VA's Regional Counsel, rather than to the General Counsel, his request had not been properly filed. The court found that this defect was jurisdictional and did not reach the issue of the timeliness of Winter's complaint.

Winter filed this appeal. The government has declined to defend the district court's grant of summary judgment on the second ground and so does not advance that argument on appeal. Rather, the government contends that we should affirm summary judgment because the district court incorrectly decided the accrual issue. In the alternative, it contends that we should affirm summary judgment on the ground that Winter failed to file a timely complaint.

*Standard of Review*

We review grants of summary judgment de novo. *Weiner v. San Diego County,* 210 F.3d 1025, 1028 (9th Cir.2000).

*Accrual*

 Under the FTCA, a tort claim against the United States is barred unless it is presented in writing to the appropriate federal agency "within two years after such claim accrues." 28 U.S.C. § 2401(b). A claim accrues when a plaintiff knows that he has been injured and who has inflicted the injury. *United States v. Kubrick,* 444 U.S. 111, 122–23, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). Accrual of a claim does not "await awareness by a plaintiff that his injury has been negligently inflicted." *Id.* at 123, 100 S.Ct. 352. As we have pointed out, "It is well settled that the limitations period begins to run when the plaintiff has knowledge of injury and its cause, and not when the plaintiff has knowledge of legal fault." *Rosales v. United States,* 824 F.2d 799, 805 (9th Cir. 1987).

 We have consistently held that a cause of action does not accrue under the FTCA when a plaintiff has relied on statements of medical professionals with respect to his or her injuries and their probable causes. In *Raddatz v. United States,* an Army doctor perforated the plaintiff's uterus while inserting an IUD. 750 F.2d 791, 793 (9th Cir.1984). The plaintiff subsequently visited Navy doctors, who informed her that her severe pain and other symptoms were normal side effects of a perforated uterus. *Id.* A civilian doctor later diagnosed her condition as a pelvic inflammatory disease. *Id.* at 793–94.

Raddatz filed FTCA claims against both the Army and the Navy. The district court

granted summary judgment to the defendants, concluding that both claims accrued on the date Raddatz's uterus was perforated, over two years prior to the filing of her administrative claims. *Id.* at 795. We affirmed summary judgment with respect to the Army claim, because Raddatz was clearly aware of the injury and its cause on the date of the perforation. *Id.* at 796. We reversed with respect to the Navy claim. Recognizing that the Navy claim was based on negligent failure to diagnose and warn, we concluded that Raddatz was not aware of her more serious condition until her civilian doctor explained it to her. *Id.* We further explained: "In fact, when she tried to find out why her condition was getting worse, the Navy doctor repeatedly assured her that her condition was a normal consequence of her perforated uterus. *Such assurances may be reasonably relied on by a patient." Id.* (emphasis added).

We applied the *Raddatz* reasoning in *Rosales v. United States,* 824 F.2d 799 (9th Cir.1987). *Rosales* concerned a baby's birth defect claims, arising out of a doctor's alleged failure to remove an IUD prior to birth. Doctors informed the baby's parents that her "lazy lid" was a temporary condition resulting from her premature birth. *Id.* at 803–04. The baby was later diagnosed with permanent mental retardation. *Id.* at 802. The district court dismissed her FTCA claim on timeliness grounds, concluding that the cause of action accrued at the baby's birth.

We again reversed concluding that in this case the baby's parents "did not know, and reasonably should not have known, of the cause of Victoria's injury," until they were informed by doctors of the probable cause of the retardation. *Id.* at 804–05. Noting that the doctor the Rosaleses consulted was unsure of the cause of the baby's retardation even after he was aware of the baby's condition, we viewed this circumstance as critical, emphasizing that "[o]rdinarily, a plaintiff cannot be expected to discover the general medical cause of his injury even before the doctors themselves are able to do so." *Id.* at 805. Where "not even the doctors knew of the probable general medical cause," we held, an FTCA medical malpractice claim does not accrue. *Id.*

■ The principles of these cases are equally applicable here. At no point did any doctor tell Steven Winter that the electrodes implanted by Dr. Marsolais caused, or might have caused, his cellulitis. When Winter suggested in 1989, based on his lay suspicion, that the electrodes might have been causing problems, he was clearly told that the electrodes were not the cause of his infection. The specialist Winter consulted, Dr. Kadakia, relied on the information provided by Dr. Marsolais, a leading authority on electrode implantation and the very doctor who implanted the electrodes.[1] Dr. Kadakia assumed that this information was valid and credible, and elected not to perform surgery on Winter. Yet the government asks us to hold that Winter, a layman with no medical knowledge, knew or should have known the cause of his injuries at this point, despite the uncertainty of Winter's own treating physician, a specialist in this area who had apparently rejected the electrodes as a possible cause.[2]

---

1. Under the FTCA, it does not matter whether Winter listened to the advice of Dr. Marsolais or that of Dr. Kadakia. His claim does not accrue no matter whether he relied on the statements of the doctor alleged to have committed the malpractice, or another treating physician. *See Rosales,* 824 F.2d at 804. We express no opinion as to whether a private doctor might be entitled to the repose provided by the statute of limitations where the patient failed to bring a claim for many years through no fault of the defendant physician.

2. It is true that the district court concluded that by January 1989 Winter "possessed the facts sufficient to prompt a reasonable person to seek legal advice." Unlike the government, we do not view this statement as dispositive of this case. First, this conclusion (which we are free to review de novo) must be viewed in the context of the district court's decision as a whole. The district court also concluded that Winter could reasonably rely on Dr. Marsolais's statements. Second, the district court never concluded that Winter knew the proba-

Nothing in our case law compels such an implausible holding. Indeed, the leading Supreme Court decision is almost exactly to the contrary. *Kubrick* assumes a situation in which a plaintiff is "in possession of the critical facts that he has been hurt and who has inflicted the injury." 444 U.S. at 122, 100 S.Ct. 352. The plaintiff in *Kubrick* was specifically told, by a specialist in the relevant field, that it was "highly possible" that the plaintiff's injuries were caused by a particular treatment. *Id.* at 114, 100 S.Ct. 352. Such a plaintiff, unlike Winter, is on clear notice of the cause of his or her injury. If he or she does nothing, it is appropriate that his or her FTCA claims be barred. By contrast, Winter was not told one word about the medical cause of his injuries, other than that it was highly *unlikely* to be the cause that he now alleges.

Herrera–Diaz v. United States, 845 F.2d 1534 (9th Cir.1988), heavily relied on by the government, is likewise inapposite. In *Herrera–Diaz*, we upheld the dismissal of an FTCA complaint where a mother had failed to inquire about the cause of her baby's brain damage. We held that, as the mother was told that the damage was caused by a lack of oxygen, she "knew, or in the exercise of reasonable diligence should have discovered, both [her baby's] injury and its cause." *Id.* at 1537. Unlike the plaintiff in *Herrera–Diaz*, Winter was never told the medical cause of his injury. If Winter had been told that the electrodes were the cause (or even a probable cause) of his cellulitis, *Herrera–Diaz* would control. But Winter was never told this by anyone. Winter's position thus cannot be fairly compared with the plaintiff in *Herrera–Diaz*, who knowingly sat on her rights.

We therefore conclude that the district court properly denied summary judgment on the ground that Winter's claim had not accrued prior to July 21, 1992.

ble cause of his injury, which is necessary for

## Timely Filing of Complaint

 The government argues, in the alternative, that we can affirm summary judgment on Winter's alleged failure to timely file his complaint. We will not reach this issue, since it was not addressed by the district court and it involves the resolution of disputed factual issues.

## Conclusion

The district court's grant of summary judgment is REVERSED, and this case is REMANDED to the district court for further proceedings consistent with this opinion.

accrual of a claim under *Kubrick* and *Rosales.*