RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0078p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TIFFANY ANESTIS, Individually, and as
Administratrix of the Estate of Cameron Anestis,
deceased, and as Mother and Next Friend of IA, an
infant,

          *Plaintiff-Appellant,*

    *v.*

UNITED STATES OF AMERICA,

          *Defendant-Appellee.*

No. 13-6062

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington
No. 5:11-cv-00028—David L. Bunning, District Judge.

Argued:  March 20, 2014

Decided and Filed:  April 18, 2014

Before: BATCHELDER, Chief Judge; McKEAGUE, Circuit Judge; OLIVER, District Judge.[*]

_____

## COUNSEL

**ARGUED:**  Albert F. Grasch, Jr., GRASCH LAW, PSC, Lexington, Kentucky, for Appellant.
Henry C. Whitaker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Appellee.  **ON BRIEF:**  Albert F. Grasch, Jr., GRASCH LAW, PSC, Lexington, Kentucky, for
Appellant.  Henry C. Whitaker, Charles W. Scarborough, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellee.

_____

[*]The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio,
sitting by designation.

1

—————————

**OPINION**

—————————

McKEAGUE, Circuit Judge.  Cameron Anestis, a former-Marine and veteran of the war in Iraq, committed suicide after he was turned away from two Veterans Administrative ("VA") clinics.  His widow asserted claims under the Federal Tort Claims Act, claiming that the VA committed medical malpractice in turning her husband away from the VA clinics.  The district court granted the Government's motion to dismiss, holding that it did not have jurisdiction over the claims because they involved a review of a VA "benefits determination" and the Veterans Judicial Review Act precluded it from exercising jurisdiction over all claims challenging VA benefits determinations.  For the reasons stated below, we **REVERSE** and **REMAND** the case to the district court.

**I.**

In April 2009, Cameron Anestis ("Cameron"), after serving approximately eight months as a Marine in Iraq, returned to Lexington, Kentucky, where he lived with his wife, Tiffany Anestis ("Anestis"[1]), and their infant daughter.  On April 17, 2009, he applied for VA Medical Benefits, but did not include with his application any materials to verify his service in the U.S. military, such as his DD-214 (a document provided to a veteran reflecting his dates of deployment, etc.).  Because a document verifying his military service was not included in his application, the VA did not enroll him into the VA medical system and classified his enrollment status as "pending."  When a veteran fails to include a document verifying his military service, the VA attempts to independently verify the qualifying service.  By August 12, 2009, the VA had verified that Cameron had served in the military.  The VA's electronic record, however, did not reflect that he had served in combat or that he was otherwise eligible to be enrolled in the VA health system, and his enrollment status as of August 12 was "Rejected: Below Enrollment Group Threshold."  On August 26, Cameron's records were updated to show that he had served

—————————

[1]Tiffany Anestis sued as Administrator of the Estate of Cameron Anestis, individually, and on behalf of her child. "Anestis" is used to refer to all three Plaintiffs in the case.

in combat, and he was then accepted and enrolled in the VA system, retroactive to his original date of application.

Upon his returning after the war, Cameron's family noticed a change in his behavior and a decline in his mental health. His parents contacted the mental health department of the Lexington, Kentucky VA, seeking advice and help for their son. Cameron's father spoke with Barbara Slater, a program manager in the Lexington VA's mental health division, who suggested that Cameron seek professional help from the VA.

Following this conversation, Cameron's parents began urging him to seek help from the VA. Tiffany, Cameron's wife, told him that she would not continue to live with him unless he sought help. On Sunday, August 16, 2009, Cameron broke down and told his parents that he had been involved in a horrific incident in Iraq involving the killing of a civilian family.

On Monday, August 17, Cameron went to the VA Mental Health Center at the Leestown Road Division of the Lexington VA ("Leestown VA").[2] Upon arrival at the Leestown VA, Cameron was greeted by Carol McIntosh ("McIntosh"), the intake clerk. She checked for his name in their computer, but the search returned no results.

McIntosh stated that she recognized that Cameron was in urgent need of help and met with him for 35 to 40 minutes. She recalls that he told her about his difficulties, including the story of the incident in Iraq and his marital problems, and that she concluded that Cameron was suicidal at the time of the visit to the Leestown VA clinic.[3]

McIntosh knew that no mental health professional was available to see Cameron at the Leestown VA. She testified that if a mental health professional had been available, she would have arranged for Cameron to be seen by a professional at the Leestown VA. However, because

---

[2]While the VA typically does not provide care for walk-in patients at the Leestown VA, it is not uncommon for veterans seeking emergency care in Central Kentucky to go to that facility.

[3]McIntosh stated that she believed Cameron was in a suicidal state of mind when she evaluated him at the Leestown VA facility.

> A: Well, he just said he was at his, at the end of the rope. When you say stuff to me in mental health, that tells me that you've got suicide thoughts, of course.

> R. 111-6, McIntosh Interview at 2, PageID # 3431.

no professional was available at the Leestown VA, McIntosh told Cameron that there was nothing she could do except to send him to Cooper Drive, a separate VA clinic, ("Cooper Drive VA") where walk-ins who came to the Leestown VA were seen.

Cameron then called his father and told him that he had been directed to go to the Cooper Drive VA. Cameron called his father again, about 20 to 30 minutes later, stating that he had been turned away from the Cooper Drive VA because he did not have his DD-214. Cameron then drove to his Georgetown home, where he and his wife resided. He told his wife that he had gone to the Cooper Drive VA, but had been turned away because he did not have his DD-214, and they began searching for the form. After an unsuccessful search, Cameron became frustrated, got into an argument with his wife, and quickly lost control. Cameron choked and threatened to kill her, but after a struggle, Tiffany Anestis was able to escape and called 911. While she was on the phone with 911, she heard a gunshot, and discovered that her husband had committed suicide.

The administrators of the VA testified that it was the VA's policy that when a veteran appeared at the Leestown VA seeking immediate treatment to determine whether the veteran needed emergency care. If the intake clerk determined that the veteran needed emergency care, the veteran was to be transported by ambulance to the Cooper Drive VA. Curiously, it is also the VA's position that an intake clerk, such as McIntosh, was not qualified to make an assessment as to whether the veteran was in an emergency situation. However, despite the fact that the VA admits that intake clerks are not healthcare professionals trained to perform such evaluations of a veteran's mental and emotional state, the VA admits that it was its policy and practice to have the clerks make such determinations. Anestis claims that the Lexington VA had a policy to provide care to a veteran in an emergency situation without regard to whether the veteran is deemed eligible for VA benefits.

Furthermore, at the time Cameron attempted to receive treatment at the Cooper Drive VA, it was the VA's policy that under no circumstances was any veteran to be turned away from receiving care for not having a copy of his or her DD-214. James Murray, Assistant Chief of Health Administration Service, and Judith Rittenhouse, Chief of Health Administration Service, testified that no veteran should ever be turned away and denied care for this reason.

After exhausting her administrative remedies, Anestis brought this Federal Tort Claims Act ("FTCA") suit against the United States in the U.S. District Court in Kentucky. Anestis asserted that the United States had a "duty to provide proper and appropriate medical care" to Cameron, and the failure to provide mental health treatment caused his death.

Following discovery, the United States moved to dismiss, or in the alternative, for summary judgment. The United States claimed that the Veterans' Judicial Review Act ("VJRA") precluded the district court from exercising jurisdiction over Anestis's claim because all of the claims challenged a VA determination regarding VA medical benefits. The United States claimed that the VJRA established exclusive channels for the review of VA decisions, and because Anestis's claims challenged a VA benefits determination, the VJRA precluded district court review of those claims.

The district court agreed with the Government, resting its decision on its belief that the VJRA precluded the court from having jurisdiction over Anestis's claims. The district court reasoned that district courts "do not acquire jurisdiction [to] hear challenges to benefits decisions merely because those challenges are cloaked as medical malpractice actions brought under the Federal Tort Claims Act." R. 134, Memo. Op. and Order at 5, PageID # 4197.

## II.

In considering a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, a district court may consider factual matters outside the pleadings and resolve factual disputes. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The district court in the instant case did not resolve factual disputes and instead granted the motion based on the undisputed facts alleged in the pleadings and developed by the parties during discovery. Accordingly, the district court did not make factual determinations because it was dismissing the case even if Anestis's factual assertions were accepted as true. The district court's decision to dismiss for lack of jurisdiction is a question of law that this Court reviews *de novo*. *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 324, 330 (6th Cir. 2007).

The VJRA provides that "[t]he Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of *benefits* by the

Secretary to veterans" and that the Secretary's decision "shall be final and conclusive and may not be reviewed by any other official or by any court." 38 U.S.C. § 511 (emphasis added).[4] The Code of Federal Regulations defines "benefit" as "any payment, service, commodity, function, or status, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors." 38 C.F.R. § 20.3. The VA medical benefits package includes authorized emergency care in VA facilities, 38 C.F.R. § 17.38, but veterans can receive authorized humanitarian emergency care not included in the benefits package. 38 C.F.R. § 17.37.

The VJRA "creates a broad preclusion of judicial review of VA decisions." *Beamon v. Brown*, 125 F.3d 965, 970 (6th Cir. 1997); *see also Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1023 (9th Cir. 2012) (noting that "Congress was quite serious about limiting our jurisdiction over anything dealing with the provision of veterans' benefits"). Section 511(a) has been interpreted to require the district court to first determine whether adjudication of the claim would require the district court to review the Secretary's decision regarding benefits. *Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2001). If it would, then the district court lacks jurisdiction over the claim. If it would not, then the action may proceed in district court.

The Government argues that the VJRA precludes the district court from exercising jurisdiction over Anestis's claims because the VA clinic's decisions not to provide Cameron medical care were benefits determinations as defined under Section 511 of the VJRA. Anestis counters that Section 511 does not bar her claim because she does not allege a denial of benefits, but a violation of medical standards of care and VA policies regarding emergency care.

The case law on this jurisdictional issue is limited—the Sixth Circuit has only one case addressing the issue, and most circuits have only a handful of cases which directly address the

---

[4]Section 511(a) of the VJRA provides as follows:

The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provisions of benefits by the Secretary to veterans or the dependents or survivors of veterans . . . . The decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

38 U.S.C. § 511.

jurisdictional issue. The case most relevant to the instant suit is *Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005). In *Thomas*, the D.C. Circuit "reject[ed] any implication that all action or inaction by the VA represents a type of 'service,' and therefore automatically constitutes a 'benefit.'" 394 F.3d at 975. *Thomas* involved a case where the VA diagnosed the veteran with schizophrenia but failed to relay this diagnosis to the veteran until eight years later. The veteran sued, alleging negligence in the VA's failure to disclose the diagnosis and provide treatment. The D.C. Circuit, in determining which claims survived the motion to dismiss, distinguished between benefit determinations claims and non-benefit determinations claims. The plaintiff in *Thomas* asserted a variety of claims, including: failure to render appropriate medical services; denial of necessary medical care; intentional infliction of emotional distress; medical negligence; and medical malpractice.[5] *Id.* at 974. The D.C. Circuit held that Section 511 precluded the district court from exercising jurisdiction over the plaintiff's claims of failure to render appropriate medical services and denial of necessary medical care because the court would need to determine whether the VA provided the proper level of benefits. *Id.* at 975. In contrast, Section 511 did not preclude the plaintiff's claims of intentional infliction of emotional distress, medical negligence, or medical malpractice because those claims were unrelated to a VA approval or provision of benefits. *Id.* at 974. Rather, the claims "relate[d] to whether the alleged withholding of the diagnosis states a tort claim, and resolution of those questions is not 'necessary' to the benefits determination." *Id.*

The Sixth Circuit has dealt with the jurisdictional question of the VJRA in one case. In *Beamon v. Brown*, this court held that Section 511 precludes district court review of a claim challenging the manner in which the Department of Veterans Affairs processes claims for veterans' benefits. The veterans had applied for benefits from the VA and had experienced delays in receiving final decisions. They then sued the VA to challenge the procedures for processing benefits. We stated that, because the district court "would need to review individual claims for veterans benefits, the manner in which they were processed, and the decisions rendered by the regional office of the VA and the BVA [Board of Veterans' Affairs]", the district court did not have jurisdiction over the claim. 125 F.3d at 970–71. We concluded that the VJRA

---

[5]The plaintiff in *Thomas* was pro se and the claims set forth in his complaint were at times imprecise and overlapping. However, the D.C. Circuit provided the above characterizations of the claims.

"explicitly granted comprehensive and exclusive jurisdiction to the CVA [Court of Veterans Appeals] and the Federal Circuit over claims seeking review of VA decisions that relate to benefits decisions under § 511(a)." *Id.* at 971.

*Beamon* is the only Sixth Circuit case on this issue, but it does not provide guidance as to whether the district court has jurisdiction over the instant claim. *Beamon* dealt with an issue that clearly would have prompted a review of the Secretary's decision regarding benefits: the claim challenged the manner in which the VA processed claims for VA benefits. The case alleged that the application process for benefits was unreasonably delayed, and would have involved a review of the benefits determinations of the VA, as the claim challenged the process by which the VA made such determinations. In stark contrast to *Beamon*, Anestis's claim does not involve a review of a benefits determination. Rather, Anestis's claims are couched in terms of failure to treat and failure to provide care. Anestis is not challenging the VA's decisions and actions regarding his application for benefits or his eligibility or enrollment status. Rather, Anestis is asserting that in turning Cameron away from the VA when he was in an "emergency state," the VA violated its duty as a hospital, irrespective of Cameron's status as a veteran. Accordingly, the instant case is clearly distinguishable from *Beamon*.

Other circuits have expounded on the issue. In 2012, the Ninth Circuit synthesized the case law and concluded that "§ 511 precludes jurisdiction over a claim if it requires the district court to review 'VA decisions that relate to benefits decisions,' including 'any decision made by the Secretary in the course of making benefits determinations.'" *Shinseki*, 678 F.3d at 1025 (quoting *Beamon*, 125 F.3d at 971). In *Shinseki*, veterans were challenging the delays in the VA's adjudication of veterans' mental-health care. *Id.* at 1029. The Ninth Circuit held that, because the claim implicated questions of law and fact regarding the appropriate method of providing benefits to individual veterans, the district court could not decide such claims without determining whether the VA acted properly in handling individual veterans' benefits. *Id.* As in *Beamon*, however, the claim in the Ninth Circuit involved facts where the district court clearly would have needed to review the benefits determination in order to reach a decision.

Anestis's claim is most properly characterized as a non-benefits tort claim that would not require the district court to review any VA benefits decisions. When Cameron arrived at the VA

facility, his enrollment status was "rejected." Both parties agree that he was ineligible for VA benefits that day. However, VA policy required its facilities to provide medical care to anyone in urgent need of assistance, even if the individual was ineligible for benefits or did not present a hard copy of his DD-214, or was not even a veteran. Anestis does not argue that Cameron should have been eligible for VA benefits; instead, Anestis argues that the VA violated standards of medical care and its own policies by refusing treatment when Cameron presented himself at two VA facilities in a state of emergency. Thus, Anestis's claim exists wholly independently of a need for any benefits determination.

As Anestis recognizes, simply characterizing a claim as a "failure to treat" claim does not preclude a benefits determination from also being at issue. Rather, the distinction lies in whether the failure or denial of treatment resulted from a decision by the VA or was the result of the VA's negligence in failing to abide by a legal duty. Anestis's claim involves the latter. Like the claims in *Thomas*, this claim is based on standards of care that govern medical professionals. This claim does not allege that Cameron's "rejected" benefits status was improper or that the VA denied him benefits to which he would have been entitled as an authorized enrollee. In short, Anestis's claim does not call into question or involve any VA benefits determination.

The Government cites several cases involving benefits determinations to argue that Anestis's claim similarly involves a benefits determination. But those cases clearly involve claims challenging the VA's decision to deny, delay, reduce, or administer benefits, or to adjudicate claims. *King v. U.S. Dep't of Veterans Affairs*, 728 F.3d 410 (5th Cir. 2013) (reduction of benefits); *Jones v. United States*, 727 F.3d 844 (8th Cir. 2013) (fraud and misrepresentation with benefits claim); *Shinseki*, 678 F.3d at 1037 (delays in the provision and adjudication of mental health and disability benefits); *Hicks v. Small*, 69 F.3d 967 (9th Cir. 1995) (reduction of benefits); *Larrabee v. Derwinski*, 968 F.2d 1497 (2d Cir. 1992) (administration of benefits while receiving care); *Hicks v. Veterans Admin.*, 961 F.2d 1367 (8th Cir. 1992) (reduction of benefits). In contrast, Anestis's claim is wholly unrelated to any benefits determination; it rests on the VA's duty to provide emergency care, regardless of Cameron's status as an enrollee, or even a veteran.

Furthermore, the Government argues that despite the fact that Anestis's claims are labeled as torts, her claim involves a benefits determination. *Jones*, 727 F.3d at 849 (stating that in determining preclusion under § 511(a), courts "look[] through [the] label" to the claim's "substance"). The Government argues that Anestis's claim challenges "numerous aspects of VA medical-benefits decision-making," in light of the fact that Anestis is claiming the VA failed to adhere to their internal policies when Cameron sought treatment. If this Court were to accept this expansive interpretation of "benefits determinations," a person could never sue the VA in district court under any circumstances for failure to provide medical treatment. This result seems at odds with the statute, which only specifies that the Secretary must decide all questions affecting "provisions of benefits." 38 U.S.C. § 511. Reading the statute to preclude district court jurisdiction over the instant claim would lead to an extremely broad reading of what constitutes a "benefits determination." *See Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (internal quotation marks omitted)). We, therefore, conclude that Anestis is asserting a claim which does not require a review of the Secretary's determination of benefits. This is also not a claim involving benefits masked in tort language. Rather, this claim is one where no review of the benefits determination is necessary.

Finally, the Government argues that the claim should not proceed because Anestis's claim is not a "medical malpractice claim," as the intake clerk at the Leestown VA was not acting in a professional medical capacity. While McIntosh was not authorized to make clinical decisions, she did have the duty, under VA internal policies, to determine whether Cameron presented himself in a state of emergency. In the end, whether or not Anestis has a viable "medical malpractice claim" is irrelevant to the jurisdictional question. The district court dismissed this case on a 12(b)(1) motion to dismiss for lack of jurisdiction. Whether the respective VA clinics had a duty to care for Cameron is an improper question to consider at this stage in the litigation. As Anestis's claim does not require review of a VA "benefits determination," Section 511 does not bar the district court from exercising jurisdiction over her claim.

**III.**

Because the district court found that federal jurisdiction was barred by the VJRA, it did not address the Government's argument that federal jurisdiction is precluded by the discretionary function exception to the FTCA.  We turn now to that question.  The discretionary function exception reserves the United States' sovereign immunity for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government."  28 U.S.C. § 2680(a).  "The exception covers only acts that are discretionary in nature, acts that involve an element of judgment or choice . . . .  The requirement of judgment or choice is not satisfied if a . . . policy specifically prescribes a course of action for an employee to follow."  *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal quotation marks omitted).  The exception "protects only governmental actions and decisions based on considerations of public policy," such as where Congress has delegated authority to an independent agency to implement the general provisions of a regulatory statute.  *Id.* at 323 (internal quotation marks omitted).

To determine whether the discretionary function exception applies to the government conduct at issue, we apply a two-part test. *Gaubert*, 499 U.S. at 324–35.  The first prong of the test requires that we determine whether the acts at issue are discretionary in that they "involve an element of judgment or choice." *Gaubert*, 499 U.S. at 322.  Where a policy provides mandatory instruction, the discretionary function exception does not apply.  *See id.* at 324.  If the conduct does "involv[e] an element of judgment or choice," we must proceed to the second prong: whether "that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23 (internal quotation marks omitted).

Here, the Government avers that Anestis cannot point to any "mandatory directive" that the VA or its employees failed to follow.  But this assertion ignores the testimony from several VA administrators indicating the contrary.  If a patient entered Leestown Road and either an in-take clerk or a healthcare professional determined that the patient was a danger to himself or others, the Leestown Road staff was *expected* either to find a clinician to treat the patient or send him via ambulance to Cooper Drive. R. 111-1, Page ID 3364–65; R. 111-7, Page ID 3441 (". . . someone would have to place the patient on hold and transport him by ambulance to

Cooper Drive."). Further, the Cooper Drive emergency department staff was *expected* to treat an ineligible ("humanitarian") patient suffering from an emergency condition, even if the patient did not present a Form DD-214. *Id.*, Page ID 3366 ("[D]epending on what . . . the medical situation was, if they weren't eligible they would still be triaged by a nurse. No one is turned away, even if it's humanitarian."); R. 135-2, Page ID 4219–21. According to the VA administrators, these emergency policies constituted specific directives that *would* be followed if an emergency situation arose, not flexible guidelines that were dependent upon the VA staff's judgment during an emergency situation. Therefore, these policies were mandatory, not discretionary.

Even though the VA's emergency policies did allow limited discretion in determining whether a patient was in an emergency state, that judgment is not "of the kind that the discretionary function exception was designed to shield." *See Gaubert*, 499 U.S. at 322–23. The determination of a healthcare professional or an in-take clerk as to the emergency state of a patient would not involve a consideration of public policy, but rather, only a consideration of the patient's health, and the discretionary function exception is designed to protect only public policy considerations. *See id.* at 323. Further, "medical decisions by government doctors providing medical care are not considered the exercise of a discretionary function within the meaning of the [FTCA]." *Surratt v. United States*, 582 F. Supp. 692, 700 (E.D. Ill. 1984) (citing *Beins v. United States*, 695 F.2d 591, 614–15 & n.31 (D.C.Cir.1982) (concurring opinion)).

The Government has failed to show that the actions of the VA employees, regarding Cameron's emergency situation, satisfy the two-part test of the discretionary function exception to the FTCA. Because the exception does not apply here, it does not preclude the district court from exercising subject matter jurisdiction over Anestis's claim.

## IV.

We, therefore, **REVERSE** the district court's decision to dismiss the case and **REMAND** the case for further proceedings.