**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FELISA TUNAC, on behalf of herself and as the Personal Representative of the Estate of Randy Tunac (Veteran), Deceased, *Plaintiff-Appellant*, | No. 17-15021 D.C. No. 2:16-cv-00982-ROS |
| v. | OPINION |
| UNITED STATES OF AMERICA, *Defendant-Appellee.* | |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, Senior District Judge, Presiding

Argued and Submitted March 16, 2018
San Francisco, California

Filed July 30, 2018

Before: Richard A. Paez and Sandra S. Ikuta, Circuit
Judges, and Lynn S. Adelman,[*] District Judge.

Opinion by Judge Ikuta

---

[*] The Honorable Lynn S. Adelman, United States District Judge for the Eastern District of Wisconsin, sitting by designation.

## SUMMARY[**]

### Federal Tort Claims Act

The panel affirmed the district court's dismissal of a surviving spouse's suit against the United States under the Federal Tort Claims Act ("FTCA") for wrongful death and negligent malpractice.

The complaint alleged that a medical center operated by the Department of Veterans Affairs (VA) caused Randy Tunac's death by delaying urgently needed medical treatment.

The panel held that it had jurisdiction to the extent that the complaint alleged negligence by VA healthcare workers (defined as medical professionals and related support staff listed in 38 U.S.C. § 7316(a)(2)). The panel further held that the claims regarding negligence in VA operations must proceed under the congressionally-mandated pathway set forth in the Veterans' Judicial Review Act, and any appeal could only be heard by the U.S. Court of Appeals for the Federal Circuit.

The panel held that to the extent there was jurisdiction, those claims were barred by the FTCA's statute of limitations. The panel concluded that the two-year statute of limitations had long run when plaintiff filed her administrative claim, and her claims were barred by

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

28 U.S.C. § 2401(b). The panel further held that plaintiff's claim could not be equitably tolled.

## COUNSEL

Veronica L. Manolio (argued), Manolio & Firestone PLC, Scottsdale, Arizona, for Plaintiff-Appellant.

Adam R. Smart (argued), Assistant United States Attorney; Krissa M. Lanham, Deputy Appellate Chief; Elizabeth A. Strange, First Assistant United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Defendant-Appellee.

## OPINION

IKUTA, Circuit Judge:

This appeal raises the question whether we have jurisdiction over a claim alleging that a medical center operated by the Department of Veterans Affairs (VA) caused Randy Tunac's death by delaying urgently needed medical treatment. We conclude that to the extent the complaint alleges negligence by VA healthcare employees (defined as medical professionals and related support staff listed in 38 U.S.C. § 7316(a)(2)), we have jurisdiction under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346. The complaint's claims regarding negligence in VA operations, however, must proceed under the congressionally-mandated pathway set forth in the Veterans' Judicial Review Act (VJRA), Pub. L. No. 100-687, 102 Stat. 4105 (1988), and any appeal can be heard only by the United States Court of Appeals for the Federal Circuit, *see* 38 U.S.C. § 7292. To the

extent we do have jurisdiction, the claims are barred by the FTCA's statute of limitations.

I

Felisa Tunac, the surviving spouse of Randy Tunac, brought suit against the United States pursuant to the FTCA, for wrongful death and negligent malpractice. According to the complaint, Randy Tunac began a six-month deployment with the U.S. Navy in 1995. Before completing his deployment, he was diagnosed with lupus nephritis, otherwise known as kidney inflammation, and was medically retired from the military. After retirement, Randy Tunac continued to receive treatment for lupus at the Carl T. Hayden VA Medical Center in Phoenix, Arizona, but saw a private physician for separate cardiological issues. In 2009, Randy Tunac's private physician ordered him to make an appointment immediately at the VA medical center after his blood test showed signs of kidney failure. Randy Tunac promptly contacted the VA medical center, but was told that it could not schedule him for an appointment until October or November 2009.

Randy Tunac was finally seen at the medical center on December 2, 2009. A biopsy of his kidney confirmed that he had reached end-stage kidney disease, necessitating dialysis. However, the VA could not schedule dialysis immediately, and set his next appointment for December 30, 2009. Seven days before his appointment, Randy Tunac collapsed at work and was rushed to St. Joseph's Hospital, where he was pronounced brain-dead on arrival. Randy Tunac passed away on December 27, 2009 from respiratory failure stemming from renal failure. On January 14, 2010, the VA medical center sent a letter addressed to Randy Tunac notifying him

that his active lupus nephritis required immediate treatment or would result in "end stage kidney disease and even death."

In May 2014, Randy Tunac's widow, Felisa Tunac, saw media reports that gross mismanagement and unacceptable wait times at the Hayden VA Medical Center were contributing to otherwise preventable veteran deaths. After further investigation, she learned that an internal audit of the VA's operations confirmed the VA's negligence in follow-up, care coordination, quality, and continuity of care for its veteran patients.

Felisa Tunac filed an administrative claim with the VA on April 17, 2015. After the VA denied her claim on October 8, 2015, she brought this action in district court. Her complaint includes two counts: wrongful death and negligence/medical malpractice. For the first count, the complaint alleges that the VA and its employees caused Randy Tunac's death by failing to provide him with "adequate follow-up care and treatment to monitor Randy's condition and identify any potential relapses or adverse changes to his health"; "[f]ailing to schedule Randy for immediate (or even timely) treatment after the deterioration of his condition, as evidenced by his blood work in 2009"; and "[f]ailing to schedule Randy for immediate dialysis after the results of his kidney biopsy in December 2009." The complaint alleges that the United States and the VA are liable for the acts and omissions of the employees pursuant to the FTCA.

For the second count, the complaint alleges that the employees and the VA breached their duty to Randy Tunac "to provide him with timely, quality healthcare." Again, the complaint alleges that the United States and the VA are liable

for the acts and omissions of the employees pursuant to the FTCA.

The VA filed a motion to dismiss the complaint, arguing that the VJRA deprived the district court of jurisdiction over Felisa Tunac's claims, because they related to benefits decisions. The VJRA bars a district court from hearing claims relating to the provision of benefits to veterans. *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1025 (9th Cir. 2012) (en banc) (*VCS*). The VA also argued that her claims were untimely under the FTCA, which bars tort claims against the United States unless an administrative claim is brought within two years after the claim accrues. 28 U.S.C. § 2401(b)

The district court noted the difficulty in determining whether it had jurisdiction over Tunac's claims, because the FTCA confers jurisdiction on district courts to hear claims alleging negligence against VA doctors, *VCS*, 678 F.3d at 1023 n.13, but the VJRA bars a district court from hearing claims relating to benefits decisions, *see id.* at 1025, which—read broadly—could include decisions causing delays in treatment. Nonetheless, after reviewing Ninth Circuit and out-of-circuit precedent, the district court concluded that it had jurisdiction to hear certain aspects of Felisa Tunac's claims. The district court then dismissed Tunac's claims as untimely because she filed her administrative claim nearly five years after the claims accrued. Tunac timely appealed.

II

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction."

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Although we may "choose among threshold grounds for denying audience to a case on the merits," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999), the Supreme Court has concluded that a judgment based on the statute of limitations is a judgment on the merits, *see Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 228 (1995). Accordingly, we must determine whether we have jurisdiction over this complaint before we can reach the government's argument that Tunac's complaint is barred by the statute of limitations. In order to determine our jurisdiction, we must address the relationship between the VJRA and the FTCA.

## A

*VCS* explains both the history of judicial review of VA decisionmaking and the VJRA's effect on the scope of that review. *See* 678 F.3d at 1020–23. In brief, within a few years after Congress established the VA in 1930, it enacted legislation precluding judicial review of the VA's benefits decisions. *Id.* at 1020. After the Supreme Court interpreted the applicable preclusion provision as permitting courts to review a range of constitutional and legal challenges to veterans' claims against the VA, Congress enacted the VJRA (codified at various sections of Title 38 of the U.S. Code) to establish procedures for reviewing VA decisions and to expand the scope of the provision precluding judicial review. *See id.* at 1020–23.

In establishing new procedures, Congress "placed responsibility for reviewing decisions made by VA Regional Offices and the Board of Veterans' Appeals in a new Article I court, the United States Court of Appeals for Veterans

Claims [(the Veterans Court)]," *id*. at 1021 (citing 38 U.S.C. §§ 7251, 7261), which has "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals," 38 U.S.C. § 7252(a). The Veterans Court may "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary." *Id.* § 7261(a)(1). Decisions by the Veterans Court are "reviewed exclusively" by the United States Court of Appeals for the Federal Circuit, which "shall decide all relevant questions of law, including interpreting constitutional and statutory provisions." *VCS*, 678 F.3d at 1022 (quoting and citing 38 U.S.C. § 7292(a), (c), (d)(1)).

In addition to establishing this exclusive pathway for judicial review of benefits decisions, Congress enacted a new provision, eventually codified at 38 U.S.C. § 511, to "broaden the scope" of the prior preclusion provision and "limit outside 'court intervention' in the VA decisionmaking process." *Id.* at 1022 (quoting H.R. Rep. No. 100-963, at 27 (1988)). Under § 511, the Secretary of Veterans Affairs "shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a). Subject to enumerated exceptions, "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise." *Id.*

In *VCS*, we addressed the scope of the jurisdictional limitation imposed by § 511. *See* 678 F.3d at 1022. After reviewing our precedents and out-of-circuit cases, we concluded "that § 511 precludes jurisdiction over a claim if

it requires the district court to review VA decisions that relate to benefits decisions, including any decision made by the Secretary in the course of making benefits determinations." *Id.* at 1025 (internal quotation marks and citations omitted). Said otherwise, the preclusion "extends not only to cases where adjudicating veterans' claims requires the district court to determine whether the VA acted properly in handling a veteran's request for benefits, but also to those decisions that may affect such cases." *Id.*

*VCS* applied this test in considering claims by two non-profit veterans organizations challenging, among other practices, both the adjudication of claims for benefits by the Veterans Benefits Administration (VBA) and the provision of medical treatment by the Veterans Health Administration (VHA). *Id.* at 1017.[1] As relevant here, the veterans organizations challenged "delays in the VHA's provision of mental health care," *id.* at 1026, including delays in the provision of medical treatment to veterans who were already "eligible for or receiving medical services," *id.* at 1017. We first held that mental health care was clearly a benefit under § 511(a), because the VA's regulations define "benefit" broadly as "any payment, service, . . . or status, entitlement to which is determined under laws administered by the Department of Veterans Affairs pertaining to veterans and their dependents and survivors." *Id.* at 1026 (alteration in original) (quoting 38 C.F.R. § 20.3(e)). Accordingly, we concluded that § 511 "undoubtedly would deprive us of jurisdiction to consider an individual veteran's claim that the VA unreasonably delayed his mental health care." *Id.* Because "there is no way for the district court to resolve

---

[1] As we explained in *VCS*, the VA is comprised of the VBA, VHA, and the National Cemetery Administration. 678 F.3d at 1017 n.4.

whether the VA acted in a timely and effective manner in regard to the provision of mental health care without evaluating the circumstances of individual veterans and their requests for treatment, and determining whether the VA handled those requests properly," *VCS* concluded that we lacked jurisdiction "to consider [the organizations'] various claims for relief related to the VA's provision of mental health care." *Id.* at 1028. *VCS* thus makes clear that we lack jurisdiction to review whether the VA unreasonably delayed medical care for an individual veteran as a scheduling matter, because such a claim requires review of a benefits decision.

B

Notwithstanding the expansive scope of § 511's preclusion of judicial review, *VCS* acknowledged that we continue to have jurisdiction to hear some claims brought by individual veterans under the FTCA. *See id.* at 1023 & n.13. The FTCA gives district courts "exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). We noted in *VCS* that we had previously considered a veteran's FTCA claim and held that jurisdiction was appropriate because his claim that he did not receive a timely and correct diagnosis "would not 'possibly have any effect on the benefits [the veteran] has already been awarded.'" *Id.* at 1023 (quoting and citing *Littlejohn v. United States*, 321 F.3d 915, 921 (9th Cir. 2003)). *VCS* therefore recognized that the FTCA "specifically confers jurisdiction on federal district courts to hear" claims involving medical negligence. *Id.* at 1023 n.13.

Our sister circuits have reached similar conclusions. In *Thomas v. Principi*, for instance, the D.C. Circuit held that it had jurisdiction under the FTCA over the veteran's claims that the VA negligently failed to inform the veteran about his diagnosis. *See* 394 F.3d 970, 973–75 (D.C. Cir. 2005). While acknowledging the broad definition of "benefit" in § 511, the D.C. Circuit rejected "any implication that all action or inaction by the VA represents a type of 'service,' and therefore automatically constitutes a 'benefit.'" *Id.* at 975. For instance, "if a VA doctor left a sponge inside a patient during surgery, section 511 would permit an FTCA malpractice suit in district court." *Id.* By contrast, claims that the VA "failed to render the appropriate medical services" because it denied the veteran's request for benefits "would require the district court 'to determine first whether the VA acted properly' in providing [the veteran] benefits." *Id.* (quoting *Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000)). The D.C. Circuit ultimately concluded that the veteran's negligence and malpractice claims did not raise any "questions of law [or] fact necessary to a decision by the Secretary under a law that affects the provision of benefits" for purposes of § 511, and that the claims could therefore proceed under the FTCA. *Id.* at 974–75 (alteration in original) (quoting 38 U.S.C. § 511); *see also Anestis v. United States*, 749 F.3d 520, 524, 528 (6th Cir. 2014) (holding that a veteran could bring an FTCA claim for medical malpractice against a VA intake clerk because she was authorized to perform "evaluations of a veteran's mental and emotional state").

C

While acknowledging that we retained jurisdiction under the FTCA over certain negligence and medical malpractice

claims brought by veterans against the VA, *VCS* admitted that we had not yet been able to "articulate a clear standard for evaluating our jurisdiction" in this context. 678 F.3d at 1023. We now articulate such a standard, at least for discerning whether a claim is one for medical negligence under the FTCA, instead of a claim that the VA acted improperly in handling a veteran's request for benefits, thus relating to a benefits decision. As we have previously indicated, Congress has given us guidance on this issue by enacting separate procedures for dealing with medical negligence claims. *See Littlejohn*, 321 F.3d at 921 n.5 (noting "the separate administrative procedures set up by the VA to deal with FTCA claims"); *see also VCS*, 678 F.3d at 1023 n.13 (noting the VA's "separate procedures for dealing with FTCA claims"). We now consider this guidance.

Just three years after enacting the VJRA, Congress enacted the Department of Veterans Affairs Health-Care Personnel Act of 1991, Pub. L. No. 102-40, 105 Stat. 187 (the HCPA), which provided for increased pay of VA healthcare professionals, codified collective bargaining rights for such professionals, and made substantial revisions to the organization and administration of the VHA. Like the VJRA, the HCPA was codified in various sections of Title 38. *See id.* In connection with the HCPA's amendments to the organization and functions of the VHA, Congress added a provision, 38 U.S.C. § 7316, to cover how the federal government will respond to medical malpractice and negligence suits against VA employees. This provision established that the FTCA would provide the remedy for "damages for personal injury, including death, allegedly arising from malpractice or negligence of a health care employee of the [VA] in furnishing health care or treatment," but that this remedy would be "exclusive of any other civil

action or proceeding by reason of the same subject matter against the health care employee (or employee's estate) whose act or omission gave rise to such claim." *Id.* § 7316(a)(1).**²** The term "health care employee of the [VA]" is defined to mean "a physician, dentist, podiatrist, chiropractor, optometrist, nurse, physician assistant, expanded-function dental auxiliary, pharmacist, or paramedical (such as medical and dental technicians, nursing assistants, and therapists), or other supporting personnel." *Id.* § 7316(a)(2). In light of the specific list of healthcare professionals, we read the catchall phrase "other supporting personnel" to mean support staff directly engaged in patient

---

**²** In full, 38 U.S.C. § 7316(a)(1) provides:

The remedy–

(A) against the United States provided by sections 1346(b) and 2672 of title 28, or

(B) through proceedings for compensation or other benefits from the United States as provided by any other law, where the availability of such benefits precludes a remedy under section 1346(b) or 2672 of title 28,

for damages for personal injury, including death, allegedly arising from malpractice or negligence of a health care employee of the Administration in furnishing health care or treatment while in the exercise of that employee's duties in or for the Administration shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the health care employee (or employee's estate) whose act or omission gave rise to such claim.

care like the listed professionals.**[3]** *See CSX Transp., Inc. v. Ala. Dep't of Revenue*, 562 U.S. 277, 295 (2011) (noting the use of *ejusdem generis* "to ensure that a general word will not render specific words meaningless").

Accordingly, § 7316 makes clear that, at a minimum, a plaintiff may bring medical malpractice and negligence claims against a "health care employee" of the VA under the FTCA. Said otherwise, when a plaintiff brings an action against a VA health care employee (meaning the professionals and related support staff listed in 38 U.S.C. § 7316(a)(2)) alleging injury from a negligent medical decision, the action may proceed under the FTCA and is not barred by the VJRA. Given that the FTCA provides the exclusive means for resolving such claims, we conclude that we have jurisdiction to hear them.

D

We now apply these principles to Felisa Tunac's complaint, and conclude that we have jurisdiction over certain claims that give rise to a "reasonable inference" that VA medical professionals breached their duty of care. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For instance, the complaint alleges that "[t]he VA failed to properly order tests and/or evaluate Randy's recurring lupus condition."

---

**[3]** The Sixth Circuit has determined this includes employees who do not possess the requisite training or skills to make medical determinations or assessments but are nonetheless authorized by the VA to do so. *See Anestis*, 749 F.3d at 524, 528 (rejecting the government's argument that the veteran did not bring a medical malpractice claim, because although the intake clerk "was not authorized to make clinical decisions, she did have the duty under VA internal policies, to determine whether [the patient] presented himself in a state of emergency").

Although these statements do not expressly claim that a medical professional should have ordered the proper tests and performed proper evaluations, we may infer as much, given that generally only medical professionals order medical tests and evaluate medical conditions. Further, the complaint alleges that the VA and its employees "caused Randy's death through their wrongful acts and neglect," specifically by "[f]ailing to provide Randy with adequate follow-up care and treatment to monitor Randy's condition and identify any potential relapses or adverse changes to his health." Again, it is reasonable to read this allegation as referring to negligence by medical professionals, as generally they are responsible for monitoring a patient's condition and providing follow-up care and treatment. To the extent these allegations relate to claims of medical negligence on the part of medical professionals, they do not relate to benefits decisions, *see VCS*, 678 F.3d at 1025, and are cognizable under the FTCA. Accordingly, the district court did not err in concluding that it had jurisdiction over some of Tunac's claims.

We do not, however, have jurisdiction over the complaint's allegations that Randy Tunac's death was caused by the VA's failure "to schedule Randy for immediate (or even timely) treatment after the deterioration of his condition" or its failure "to schedule Randy for immediate dialysis after the results of his kidney biopsy in December 2009," and similar allegations relating to the negligence in scheduling appointments and treatment. As currently drafted,[4] these allegations do not give rise to a reasonable

---

[4] The complaint does not allege, for instance, that VA medical professionals failed to inform the administrative staff in charge of scheduling appointments that Tunac's situation was dire and that he

inference that VA medical professionals breached their duty of care, but rather seek relief for the type of administrative negligence in scheduling appointments that must be channeled through the VJRA. *See id.* at 1026–28.[5]

III

Because we have jurisdiction over Tunac's claims that medical professionals at the VA medical center were negligent, we now turn to the question whether her claims are timely. "Under the FTCA, a tort claim against the United States is barred unless it is presented in writing to the appropriate federal agency 'within two years after such claim accrues.'" *Winter v. United States*, 244 F.3d 1088, 1090 (9th Cir. 2001) (quoting 28 U.S.C. § 2401(b)).[6] Tunac filed her

---

needed to be scheduled for dialysis immediately. The operative complaint simply states that the administrative staff delayed Tunac's appointment, independent of any decision or guidance by VA medical professionals.

[5] We reject Tunac's argument that *VCS* limited the VJRA's preclusion to those claims addressing *entitlement* to benefits, rather than the manner in which those benefits were provided to eligible veterans. As indicated above, *see supra* Section II.A., the organizations in *VCS* challenged delays in the provision of medical treatment to veterans who were already "eligible for or receiving medical services." 678 F.3d at 1017. We held that such claims involved a request for benefits because they asked this court to review "whether the VA handled those requests properly." *Id.* at 1028. Accordingly, we concluded that we lacked jurisdiction to hear those claims pursuant to § 511. *See id.*

[6] The full text of 28 U.S.C. § 2401(b) provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six

administrative claim with the VA on April 17, 2015. Accordingly, Tunac's claims are barred by the statute of limitations if they accrued before April 17, 2013.

"The date on which a claim accrues is determined by federal law." *Landreth ex rel. Ore v. United States*, 850 F.2d 532, 533 (9th Cir. 1988). "In a medical malpractice case under the FTCA, a claim accrues when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its cause." *Id.* The plaintiff need not know who caused the injury, *Dyniewicz v. United States*, 742 F.2d 484, 486 (9th Cir. 1984), or that the injury was caused by negligence, *Winter*, 244 F.3d at 1090, in order for the claim to accrue.

The injury in this case is Randy Tunac's death on December 27, 2009. There is no dispute that Felisa Tunac knew of the injury on that date. Tunac also knew, or reasonably should have known, that the cause of the injury was the failure of the Hayden VA Medical Center to provide adequate treatment. The complaint alleges that despite warnings from a private physician that Randy Tunac needed immediate care, the Hayden VA Medical Center delayed scheduling her husband for a preliminary kidney biopsy. And despite the biopsy showing he was in end-stage kidney disease, the medical center failed to treat Randy Tunac for nearly a month. Further, the complaint incorporates the January 2010 letter from the medical center warning that "[t]he consequence of not treating your lupus kidney disease includes end stage kidney disease and even death."

---

months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

Tunac argues, however, that she did not learn of the cause of the injury until May 2014, when media reports alerted her to the Hayden VA Medical Center's systemic negligence in delaying patient care.  But a claim accrues when a plaintiff "has knowledge of the injury and its cause, and not when the plaintiff has knowledge of legal fault." *Id.* (quoting *Rosales v. United States*, 824 F.2d 799, 805 (9th Cir. 1987)).  As the Supreme Court has made clear, accrual does not wait until the plaintiff has "reason to suspect or was aware of facts that would have alerted a reasonable person to the possibility that a legal duty to him had been breached." *United States v. Kubrick*, 444 U.S. 111, 125 (1979).  In other words, Tunac's claim accrued when she knew that the medical center's failure to treat her husband and to provide adequate follow-up care caused her husband's death, not when she learned that the delays were caused by actionable negligence.  The "[a]ccrual of a claim does not 'await awareness by a plaintiff that his injury has been negligently inflicted.'" *Winter*, 244 F.3d at 1090 (quoting *Kubrick*, 444 U.S. at 123).

Our cases holding that "a cause of action does not accrue under the FTCA when a plaintiff has relied on statements of medical professionals with respect to his or her injuries and their probable causes," *id.*, are not applicable here.  In those cases, a plaintiff reasonably relied on a doctor's assurances that an injury was not caused by medical error, *see id.* at 1091 ("[Plaintiff] was clearly told that the electrodes were not the cause of his infection."), or that there was no injury at all, *see Rosales*, 824 F.2d at 804 ("For several months after Victoria was born, doctors repeatedly assured the Rosaleses that the child's lazy lid was temporary and that no injury was present."); *Raddatz v. United States*, 750 F.2d 791, 796 (9th Cir. 1984) ("[T]he Navy doctor repeatedly assured [plaintiff] that her condition was a normal consequence of the

perforated uterus."). In contrast, Tunac was aware that her husband's prognosis called for prompt intervention, and therefore knew or should have known that the VA's failure to provide timely treatment caused his death. There is no evidence that Tunac relied on inaccurate statements by a medical professional regarding the cause of her husband's death.

Accordingly, Tunac's claim accrued, at the latest, when she received the January 10, 2010 letter from the Hayden VA Medical Center explaining the consequences of delayed treatment of Randy Tunac's condition. Because the two-year statute of limitations had long run when Tunac filed her administrative claim in April 2015, Tunac's claims are barred by 28 U.S.C. § 2401(b).

Tunac contends that the statute of limitations should be equitably tolled because the VA concealed its negligent practices that caused delays in treatment across the Phoenix VA.[7] "To establish that equitable tolling applies," a plaintiff must show, among other things, that "fraudulent conduct by the defendant result[ed] in concealment of the operative facts." *Fed. Election Comm'n v. Williams*, 104 F.3d 237, 240–41 (9th Cir. 1996). As the previous discussion makes clear, any alleged concealment by the VA of a widespread

---

[7] Tunac did not raise equitable tolling in her response to the motion to dismiss, and the district court did not address this argument in its order dismissing the complaint. Although we generally "do not consider an issue raised for the first time on appeal," we may "invoke our discretion to hear previously unconsidered claims," *Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir. 2004), where, as here, "the issue presented is purely one of law and . . . does not depend on the factual record developed below," *id.* (quoting *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985)).

problem regarding delayed treatment did not result in concealment of the operative facts—that the VA delayed Randy's treatment, possibly causing his death. Therefore, Tunac's claim cannot be equitably tolled. *See id*.[8]

**AFFIRMED.**

---

[8] We **DENY** the government's motion to strike portions of the appellate record. The VA's audit of internal operations was referenced in the complaint and in Tunac's response to the motion to dismiss. "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Although "mere mention of the existence of a document is insufficient to incorporate the contents of a document," the document is incorporated when its contents are described and the document is "integral" to the complaint. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Both conditions have been satisfied here: first, the complaint quotes from the internal audit and summarizes the audit's conclusion that the VA's actions were "unacceptable and troubling"; and second, the internal audit is clearly integral to the complaint.